**STATE of Tennessee, Appellee,**

**v.**

**Frank Edward BURNS, and Benjamin Anthony Burns, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 12, 1989.

---

Kathleen J. McGrath, Knoxville, for Benjamin Anthony Burns.

Nicholas D. Bunstine, Knoxville, for Frank Edward Burns.

Charles W. Burson, Atty. Gen. and Reporter, Miriam Nabors Banks, Asst. Atty. Gen., Nashville, David C. Jennings, Asst. Dist. Atty. Gen., Knoxville, for State.

## OPINION

WADE, Judge.

Benjamin Anthony Burns and Frank Edward Burns appeal from their convictions for second degree burglary and grand larceny. Each defendant was sentenced as a Range II persistent offender to concurrent terms of 15 and 10 years, respectively. The sentences are consecutive to sentences imposed for prior convictions.

Benjamin Anthony Burns attacks (1) the sufficiency of the evidence and (2) the incourt identification by a police officer. Each defendant claims (3) that his constitu-

tional rights were violated when a witness subpoenaed by the defense refused to testify on fifth amendment grounds; and (4) that the trial court erred in failing to grant a new trial based upon newly discovered evidence.

This court affirms the judgment of the trial court as to the defendant Frank Edward Burns. Because significant, new evidence was discovered after his trial, the conviction of Benjamin Anthony Burns is reversed and a new trial is ordered in his case.

On the afternoon of December 27, 1985, Joe Worley, who knew both defendants, was driving past the residence of his neighbor, Marci Rose, when he saw the Burns' family truck parked in the driveway. Worley recognized Frank Burns who was standing on the front porch of the residence next to another black man. Because he could only see the back of the second individual, he could not make an identification; Worley assumed it was Benjamin Burns, however, noticed an orange and green toboggan in the man's pocket, and initially reported to authorities that Benjamin Burns was a participant.

When Dwight Webb, a former deputy with the Knox County Sheriff's Department, arrived in response to Worley's call, he blocked the defendants' pickup truck as it was parked in the Rose driveway. The passenger, wearing a toboggan pulled partially over his head, exited the vehicle and ran as Webb approached with his gun drawn. Meanwhile, backup Officer Robert Alexander arrived and took control of Frank Burns. Webb pursued the passenger into a wooded area but was unable to apprehend him; he did, however, find the orange and green toboggan he wore. Although Webb made no mention of the name of the passenger in his arrest report and did not call out his name during his pursuit, he testified that he had seen the passenger four or five times previously and knew him as "Tony." When Benjamin Burns was taken into custody, Webb was called to the Sheriff's Department to view a line-up. As he walked through the booking area, he saw Benjamin Burns on the telephone and

identified him as "Tony," the passenger who fled the truck.

Upon inspection, the officers found the door of the Rose residence had been forced open and several rooms had been ransacked. A burglar alarm had been stuffed in a garbage can. A screwdriver, gloves and pillow case containing $1,000 to $1,200 worth of jewelry were found inside the truck.

Frank Burns, previously convicted of several theft related offenses, testified that he had met Jerry Craigmire earlier in the day. He related that he accepted $10.00 to drive Craigmire to the Rose residence to purchase drugs. Frank Burns denied any involvement in the burglary and contended that he never got out of his truck. Burns said his brother, Benjamin, was not present during the episode and that he did not see him until after he was released from jail that afternoon.

Benjamin Burns, who chose not to testify, presented an alibi defense. His girlfriend, Sheryl Lynn Smith, testified that he was continuously with her from 10:00 or 11:00 A.M. until 3:00 P.M. on the day of the robbery.

I

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). The verdict of guilt removes the presumption of innocence and gives rise to a presumption of guilt. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). The jury was well within its prerogative in accrediting the testimony of Officer Webb rather than that presented by the defense. By the application of the appropriate standard of review, this court may set aside a verdict only when "the evidence is insufficient to support the finding of the trier of fact beyond a reasonable doubt." Rule 13(e), Tenn.R.App.P.; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Officer Webb, who had encountered the defendant Benjamin Burns on several prior occasions, knew him by his

middle name Tony. He had several seconds to observe Benjamin Burns in broad daylight as Burns first got out of the truck then fled from the scene. This witness' identification of both the defendant and his photograph was spontaneous and unequivocal.

From the evidence presented during the course of his trial, there was a rational basis upon which the trier of fact could have properly determined the guilt of Benjamin Anthony Burns. This issue has no merit.

## II

■ Benjamin Burns contends the trial court improperly allowed into evidence the in-court identification by Officer Webb. He claims Webb's identification stemmed from an earlier, tainted identification wherein the defendant was denied his sixth amendment right to counsel.

Shortly after the burglary, Benjamin Burns came to the police station to pick up the family truck which had been impounded upon his brother's arrest. While there, he voluntarily agreed to participate in a line-up.

Officer Webb was called in by a detective to view the line-up. Upon his arrival at the detective's office, Webb was mistakenly directed to the jail. While walking through the booking area, he saw a racially mixed group of five to ten individuals, one of whom was the defendant Benjamin Burns. Webb found the detective who was arranging the line-up and informed her that he had recognized "Tony" Burns outside talking on the telephone. Because of his positive identification, the line-up was then cancelled.

This defendant claims that the identification was tainted by his lack of counsel and asserts that it was fatally suggestive.

■ When a defendant is denied his right to counsel at a line-up, the primary concern of the courts is "with the misuse of identification procedures by the adverse party (prosecutor or police) which can result in a misidentification and erroneous conviction." *U.S. v. Thevis*, 665 F.2d 616,

642 (5th Cir.1982). The rationale is that the presence of counsel will deter any misuse of the process and secure for the defendant a means of reconstructing for the court's review any unfairness in the procedure actually implemented. *Id.* (citing *U.S. v. Wade*, 388 U.S. 218, 230–36, 87 S.Ct. 1926, 1934–37, 18 L.Ed.2d 1149 (1967)).

■ The trial court found no taint, however, due to the inadvertent nature of the identification. In *Thevis*, the court held that "[a] purely inadvertent meeting between the witness and the defendant does not involve any danger that the adverse party will abuse the identification process." *Id.* at 643.

The record establishes that Officer Webb was directed to the booking area after he arrived at the detective's office. The detective was apparently surprised at his appearance. From these events, it appears that the trial court was well within its authority in determining that the meeting was, in fact, inadvertent, and not "arranged" by the investigating authorities. *See, U.S. v. Colclough*, 549 F.2d 937 (4th Cir.1977); *U.S. v. DiStefano*, 555 F.2d 1094 (2nd Cir.1977). *See Johnson v. State*, 733 S.W.2d 525 (Tenn.Crim.App.1987). The presence of five to ten other individuals within the booking area tends to negate any inference of a suggestive identification process. *See Colclough*, 549 F.2d at 942.

Furthermore, there is nothing to indicate that the officers had any motive to arrange the confrontation. Immediately after the burglary, Officer Webb informed the detective that he recognized the fleeing person as "Tony Burns." Webb testified that he recognized the defendant on sight from previous encounters. On the afternoon of the burglary, Webb had recognized a photo of the defendant when another officer was going through a file of "rap" sheets. Apparently, no one suggested the photograph to Webb nor was he there to review department records.

■ Even if the out-of-court identification was tainted by an overly suggestive process, the identification had an independent source. *See Gilbert v. California*,

388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967); *State v. Mitchell*, 593 S.W.2d 280, 287 (Tenn.1980). The officer recognized the defendant "on sight," saw him on a clear day from close range, and observed him for several seconds. He made two independent identifications of the defendant Benjamin Burns before the allegedly tainted identification in the booking area.

This issue has no merit.

### III

█ Jerry Craigmire, the man identified by Frank Burns as the primary participant in the offense, was called to testify in a jury-out hearing. When questioned about his participation in the burglary, he invoked his fifth amendment privilege. While the jury was allowed to compare Craigmire's appearance to Benjamin Burns, the trial court denied the defendants' request to place Craigmire on the stand for questioning. Afterwards, the trial court informed the jury that Craigmire had been called as a witness for the defendants and had invoked his fifth amendment right not to testify for fear of self-incrimination. The trial court instructed the jury that no inferences should be drawn by the refusal to testify.

Each defendant claims that the trial court did not properly determine whether Craigmire had invoked his privilege. They contend the ruling violated their rights of confrontation and assert that the trial court should have made a question-by-question determination of whether the privilege had been properly invoked. *See, Rogers v. U.S.*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

In the jury-out proceeding, Craigmire invoked the privilege when asked whether he had actually participated in the burglary and whether he had any knowledge of Frank Burns' involvement. In order "[to] sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question ... *might* be dangerous because injurious disclosure *could* result." *Hoffman v. U.S.*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (emphasis added.) The questions posed to the witness clearly presented a potential for incrimination. If Craigmire admitted any knowledge of the break-in, he would have necessarily confessed to his own involvement in the crime. Because the state had established that there were only two burglars, any affirmative response would have not only tended to clear the defendant Benjamin Burns from wrongdoing, it would have incriminated Craigmire. The trial court correctly permitted the witness to remain silent.

The trial court also properly refused to permit defense counsel to question Craigmire in the presence of the jury:

The calling of a witness who will refuse to testify does not fill the purpose of compulsory process, which is to produce testimony for the defendant. *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir.1974). But if it did, where there is a conflict between the basic right of a defendant to compulsory process and the witness' right against self-incrimination ... the right against self-incrimination is the stronger and paramount right. *Frazier v. State*, 566 S.W.2d 545, 551 (Tenn. Crim.App.1978). *See United States v. Johnson*, 488 F.2d 1206 (1st Cir.1973); *United States v. Wyler*, 487 F.2d 170 (2nd Cir.1973); *United States v. Beye*, 445 F.2d 1037 (9th Cir.1971).

*State v. Dicks*, 615 S.W.2d 126, 129 (Tenn. 1981).

Defense counsel suggests that had they been allowed to cross-examine Craigmire, the jury could have inferred that "there was something he knew concerning the Burnses." The particular inference sought, however, would have been founded upon the very evidence deemed inadmissible as privileged in relation to Craigmire.

This issue has no merit.

### IV

The defendants assert that they were entitled to a new trial based upon newly discovered evidence. At the hearing on the motion for new trial, three jail inmates

testified that Jerry Craigmire admitted committing the burglary along with Frank Burns.

■ The decision on whether to grant a motion for new trial based on newly discovered evidence is within the sound discretion of the trial court. *State v. Goswick*, 656 S.W.2d 355 (Tenn.1983); *Jones v. State*, 519 S.W.2d 398 (Tenn.Crim.App.1974). A new trial is a matter of right, however, when the defendant establishes the following:

1) reasonable diligence in seeking the newly discovered evidence;

2) materiality of the evidence; and

3) the evidence will likely change the result of the trial.

*Goswick*, 656 S.W.2d at 359.

None of the newly discovered evidence supports Frank Burns' claim that he innocently transported Craigmire to the crime scene. There is no serious indication that the newly discovered evidence would likely change the results of his trial. None of the three witnesses presented during the hearing on the motion for new trial gave testimony that was in any way inconsistent with the jury's conclusion that Frank Burns participated in the burglary.

Frank Burns, who testified at the new trial hearing, said that he was incarcerated after his conviction. He stated that some three weeks later he was placed in the same cell as Jerry Craigmire who had himself been jailed on an unrelated charge sometime after the burglary. Frank Burns testified that Craigmire was unwilling to accept the charge because (translating from the vernacular) another conviction would trigger enhanced sentencing under the habitual criminal statute. Burns said that by the time of the hearing on the motion for new trial, Craigmire's admissions were common knowledge among the inmates in the jail.

Nothing in the testimony of Frank Burns indicates that the new evidence would be likely to change the results of his trial. While the trial judge noted that this defendant was "most sincere" in providing the additional information, he correctly observed that the substance of Frank Burns'

testimony was to "clear his brother" and not himself.

Frank Burns is not entitled to a second trial based upon the issue of newly discovered evidence.

■ The application of the *Goswick* test produces a different result as to Benjamin Anthony Burns. Joe Worley admittedly gave the authorities erroneous information when he suggested, in his call to the department, that Benjamin Burns was the second perpetrator. He only assumed that fact by his positive identification of Frank Burns. While Officer Webb's identification was not so tainted as to be excludable at trial, there were nevertheless elements of suggestion through his viewing of police photographs, the inadvertent identification process, and the fact that Frank Burns had a brother with a record. Standing alone, Webb's identification would most certainly be sufficient to support the conviction of Benjamin Burns; it is not, however, infallible in the face of contrary evidence.

The new evidence was presented through Maurice Johnson, Larry Upshaw and Ernest Long. Although each of these witnesses had either been convicted of felony offenses or were in jail awaiting trial on pending charges, none had any opportunity to gain favor by offering their information; if anything, the reverse was true. After an extensive review of this record, this court is unable to find any apparent motive for any of these three individuals to falsely accuse Jerry Craigmire of having bragged that Benjamin Burns had been convicted "in his place." In the words of the trial judge, "most people in jails ... seem to primarily be concerned for themselves and ... are not willing to help other people, even when that might be helpful to another person."

This evidence was obviously not available before the trial. Johnson, Upshaw, and Long each testified that they overheard Craigmire's remarks a month or two after the convictions of Frank and Benjamin Burns. Although Johnson was obviously unfamiliar with the details of the charge and was uncertain whether Craigmire was

speaking of this particular offense when he admitted his culpability in a crime for which Benjamin Burns was wrongfully convicted, Upshaw knew that Craigmire feared the "bitch act" yet laughed about the misidentification of the investigating officer. Upshaw had overheard Craigmire say that after the burglary, he ran from a pickup truck wearing a toboggan to disguise his identity.

The trial court was apparently impressed by the testimony and demeanor of Ernest Long, whom he called a "good witness." Long overheard Craigmire say that Benjamin Burns had nothing to do with the burglary and that Craigmire himself was, in fact, the "charge partner" of Frank Burns.

The admissions of Craigmire had not even been made at the time of trial; obviously the statements could not have been disclosed beforehand no matter how diligent the investigation. They were certainly material to the issue of Benjamin Burns' participation in the offense. Finally, the evidence is "likely to [have] change[d] the result, if produced and accepted by the jury." *Goswick*, 656 S.W.2d at 359.

In this instance, the newly discovered evidence suggests that Craigmire, and not Benjamin Burns, committed the offense charged. Certainly this is more than just impeaching or cumulative testimony. *See Clarke v. State*, 402 S.W.2d 863 (Tenn. 1966); *State v. Collins*, 698 S.W.2d 87, 89 (Tenn.Crim.App.1985). The case of the prosecution stands or falls on the accuracy of the investigating officer's identification; there was no other significant corroboration. *See State v. Rogers*, 703 S.W.2d 166, 169 (Tenn.Crim.App.1985). This court is convinced that if accepted by the jury, the new evidence is likely to change the results of the trial. Consequently, the issue, as to the defendant Benjamin Burns, has merit.

The conviction of Frank Burns is affirmed. That of Benjamin Burns is reversed and a new trial is ordered.

DWYER and DAUGHTREY, JJ., concur.

DWYER, Judge, dissenting.

I must respectfully dissent from the opinion of my learned colleagues in their reversal of Benjamin Anthony Burns' convictions for burglary in the second degree and grand larceny on the grounds of newly discovered evidence. My disagreement stems from what, in my opinion, is the majority's misinterpretation of the applicable standard of appellate review under *State v. Goswick*, 656 S.W.2d 355 (Tenn. 1983). The majority suggests that appellant is entitled to a new trial as a matter of right simply because the three-prong test of *Goswick* is met. I cannot agree.

A careful reading of *Goswick* reveals that the three-prong test it enunciates indeed does entitle an appellant, as a matter of right, to a new trial on the grounds of newly discovered evidence where there exists no conflict in the testimony heard by the trial judge. *State v. Goswick* at 358–359. Here, however, the newly discovered evidence [1] conflicted with the testimony offered at trial by Mr. Worley and Officer Webb of the Knox County Sheriff's Department. Although Mr. Worley later recanted in his identification of the appellant, the identification and testimony of Officer Webb remained unshaken. In view of the conflicting testimony before the trial court, the majority's finding that appellant is entitled to a new trial as a matter of right is inappropriate.

As our Supreme Court noted in *Goswick*, relying upon *Taylor v. State*, 171 S.W.2d 403, 405 (Tenn.1943), where, as here, there is a conflict in the testimony heard by the trial court, the decision to grant or deny a new trial on the basis of newly discovered evidence is a matter which rests within the sound discretion of the trial court. *See also Jones v. State*, 519 S.W.2d 398 (Tenn. Crim.App.1974). This standard of appellate review, therefore, is applicable under the facts and circumstances of the instant case. Inasmuch as the trial court found

---

**1.** Testimony by three inmates that appellant was not the culprit involved in the indictment offenses.

the impeaching testimony of the inmates to be incredible, it is not for this Court to substitute its judgment for that of the trial judge who heard and observed the witnesses. We are obliged to uphold the trial court's ruling on appeal unless the evidence preponderates against such findings. *State v. Mays*, 667 S.W.2d 512 (Tenn.Crim. App.1983). In short, I find no abuse of discretion in the trial court's denial of appellant's motion.

Consequently, it is my opinion that the majority employed an inappropriate standard of review in finding that the appellant, Benjamin Anthony Burns, is entitled to a new trial, as a matter of right, on the grounds of newly discovered evidence. Accordingly, I dissent from the opinion of the majority and would affirm the judgment of the trial court.