STATE of Tennessee, Appellee,

v.

David Scott ELDRIDGE, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

May 20, 1994.

Permission to Appeal Denied Oct. 3, 1994.

Charles B. Hill, II, Kingston, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Merrilyn Feirman, Asst. Atty. Gen., Criminal Justice Div., Nashville, Charles A. Hawk, Dist. Atty. Gen., Frank Harvey, D. Roger Delp, Asst. Dist. Attys. Gen., Kingston, for appellee.

## OPINION

WELLES, Judge.

This case is here by direct appeal as of right from a conviction by jury verdict of two counts of aggravated robbery.[1] Appellant was sentenced to the Department of Correction for ten (10) years. He appeals his convictions and his sentence. We affirm.

At about 10:30 p.m. on April 4, 1991, Mr. C.V. Jones was in the general store he owned and operated between Sunbright and Deer Lodge, in Morgan County, Tennessee. The store was open for business. Mrs. Jones and a customer were also in the store. Two masked robbers entered the store and Mr. Jones was immediately shot with a shotgun.

1. Tenn.Code Ann. § 39-13-402 (1990).

Mrs. Jones left through the back door. The robbers took cash from the cash register, from Mr. Jones as he lay bleeding on the floor, and, still at gunpoint, from the customer. The robbers fled from the store on foot.

Appellant raises three issues on appeal: (1) that the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he is guilty of aggravated robbery, (2) the refusal of the trial court to allow direct examination by the Appellant of an unindicted participant in the criminal episode when that person invoked her Fifth Amendment rights, and (3) that the trial judge erred in sentencing him to ten (10) years.

I

■ The first issue to be addressed is the sufficiency of the evidence to support the conviction. When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence presented during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

■ In determining the sufficiency of the evidence, this court does not reweigh or re-evaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). This court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod,* 754 S.W.2d 627, 632 (Tenn.Crim.App.1988).

■ Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas,* 754 S.W.2d 620, 623 (Tenn.Crim. App.1987). In *State v. Grace,* 493 S.W.2d 474 (Tenn.1973), the Tennessee Supreme Court said "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *Id.* at 476.

■ Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *Id.,* the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *Matthews,* 805 S.W.2d at 780.

■ We now address the evidence presented at trial. The Appellant gave two statements to the sheriff of Morgan County, both of which were reduced to writing and introduced by the state at trial.[2] The first statement he refused to sign, but the second he did sign. The two statements are substantially alike, although the second signed statement is much longer and more detailed. His statements are summarized as follows: About three weeks before the robbery, Tommy Ford, Jeff Griffith and the Appellant discussed and planned the robbery. Carol Matheson was to drive the getaway car. On the day of the robbery the Appellant consumed several beers. That evening Carol Matheson, Jeff Griffith and the Appellant drove to a place near Mr. Jones' store. The Appellant and Jeff Griffith put on black jogging suits and panty hose masks. Griffith had a sawed off double-barrel shotgun and the Appellant had a roll of tape to tape up the occupants. The Appellant and Jeff Griffith entered the store and, almost immediately, Griffith shot C.V. Jones. The Appellant went to the cash register and opened it and

---

**2.** Appellant did not challenge the admissibility of the statements at trial or on appeal.

got the money out of it. Griffith got the money off C.V. Jones and the customer. They left the store but neither Carol Matheson nor her car were there. They ran on foot and spent that night wandering through the countryside. The next day the Appellant, Appellant's wife, Tommy Ford, Jeff Griffith and Carol Matheson headed south on Interstate 75, spent that night in a motel in Georgia and spent the next three nights and four days in Florida. They then returned to Tennessee, where the Appellant was arrested by the Morgan County Sheriff's office after the investigation led to the Appellant and others.

The State produced three witnesses at trial: Mr. Winfred C. Owens (the customer in the store), Mr. C.V. Jones, (the store owner) and Bobby Gibson, (the Sheriff of Morgan County).

Mr. Winfred C. Owens testified that he was a customer in Mr. Jones' store on the night of the robbery and that two people came through the door dressed in black jogging outfits with stockings over their faces. He said that one of them was carrying a sawed off shotgun and the other one had a pistol in his hand. He said the robber with the shotgun shot Mr. Jones almost immediately and got the money from Mr. Jones and him. He said the one with the pistol was pointing the pistol at them. He stated that Mrs. Jones was standing at the back door when the two robbers entered and that she left when the shot was fired. On cross-examination, Mr. Owens again stated that the second robber had a gun and that it appeared to be a "38 or a 357" snub-nosed pistol.

The State next called Mr. C.V. Jones. He testified that he, his wife, and Winfred Owens were in his store on the night of the robbery. Two men came in the front door and said "this is a stick up" and they "come in and shot me." He said they wore dark clothes and had stockings over their faces. He said one had a shotgun and the other one had something in his hand that looked like a pistol. He said the one with the shotgun got the money out of his pocket and from the cash register. He testified that after the robbery, he was transported by helicopter to the U.T. Hospital, where he was admitted and treated for his injuries for about two weeks. He further stated that the person without the shotgun told the one with the shotgun where Mr. Jones kept his money and to get it out of his front pocket.

Bobby Gibson, sheriff of Morgan County, then testified for the State. He testified that after his department was called, he arrived at the store within approximately twenty minutes. He testified that the Appellant was arrested by other law enforcement personnel in Chattanooga and was transported from there to Morgan County. He testified that through his investigation, he had information that "Jack (sic) Griffith" and David Eldridge were the ones who robbed Mr. Jones' store. He further testified that he had taken both of the statements from Mr. Eldridge and the statements were introduced through his testimony. He stated that during his investigation, he had talked to Carol Matheson, Nicole Eldridge and other individuals. He also testified that he recovered what he believed was the clothing worn by the robbers "laying in a field near the road," about two hundred yards from the store.

The State, at that point, rested its case.

The Appellant testified in his own defense. He said that at the time of the robbery he was married to Nicole Griffith, the sister of Jeff Griffith, but at the time of the trial he was in the process of getting a divorce. In regard to the statements that he gave the sheriff, he said that "most of it is correct". He testified that some threats had been made to him by the Sheriff during that time. He said that at that time he was in love with Nicole Griffith (Jeff Griffith's sister) and that he was afraid of Jeff Griffith and only went along with this because of his fear of Mr. Griffith. He said that on the evening of the robbery he was drunk but that he sobered up when Mr. Jones was shot. He further testified that he had smoked a little "wacky weed" on the day of the robbery. He basically reiterated everything that he had said in his statement but stated that he was intoxicated and that he went along because he was afraid of Jeff Griffith. The Appellant also called his sister, Sandy Christine Eldridge, who testified that by reputation, Jeff Griffith

was a violent person, that he was someone who was "bad trouble" and that one should "stay away from him". No other evidence was presented by the defense.

We find that there is sufficient evidence contained in this record to support a finding by the trier of fact that the Appellant was guilty of two counts of aggravated robbery beyond a reasonable doubt. T.R.A.P. 13(e).

## II

■ The Appellant next argues that the trial court erred when it would not allow defense counsel to elicit direct testimony from Carol Matheson, the individual whom the Appellant testified drove the car that took them to the store on the night of the robbery and later had involvement with the participants including the trip through Georgia to Florida.

When Appellant attempted to call Ms. Matheson, the assistant district attorney advised the court that this individual was subject to being charged in connection with the robbery and that the District Attorney's office was considering charging her for her involvement. The assistant D.A. suggested that the court should advise her of her constitutional rights. This issue was addressed outside the presence of the jury. The trial judge did advise Ms. Matheson of her right not to incriminate herself and the witness advised the court that she did not want to testify. This witness had been subpoenaed by both the State and the Defendant. The court allowed defense counsel to state for the record what he would be asking of this witness. He stated that he would be asking her about the trip to Florida with Jeff Griffith and Appellant, whether she was threatened during that time by Mr. Griffith and whether her children were threatened. He further stated that he was going to ask her if Mr. Griffith had ever threatened her before this incident and if he had ever put a gun to her.

Under these circumstances, the trial judge refused to allow defense counsel to question Ms. Matheson at all and she was excused as a witness.

The Tennessee Supreme Court has held that in the event of a conflict between the Defendant's Sixth Amendment right to have compulsory process for obtaining witnesses in his favor and the Fifth Amendment right of a person to not be compelled to be a witness against himself, the Fifth Amendment right against self incrimination is the stronger of the two rights and must prevail. *State v. Burns,* 777 S.W.2d 355, 359 (Tenn. Crim.App.1989); *State v. Dicks,* 615 S.W.2d 126, 129 (Tenn.1981).

The Appellant had stated both in direct testimony and in his statements given to the sheriff that Carol Matheson was involved in the commission of this offense. He said that she drove the robbers to the store and drove them out of state the day after the robbery where she stayed with them for several days. While the record reflects what defense counsel stated he wanted to ask this witness, there is nothing in the record to indicate what her answers to the questions might have been. It is not clear from the record that the testimony intended to be elicited by defense counsel was relevant. Because of the witnesses' direct involvement in this episode, it is obvious that any answers that she may have given in response to the questions could have implicated her in this crime. For these reasons, we conclude that the trial judge correctly permitted this witness to remain silent. This issue has no merit.

## III

The Appellant next argues that the trial court erred in sentencing the Appellant to ten (10) years with the Tennessee Department of Correction. He argues that no enhancement factors or mitigating factors were found or developed and that, thus, the Defendant should have been given the minimum sentence on each count of eight (8) years to run concurrently.

■ When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn.Code Ann. section 40–35–401(d) (1990). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. section 40–35–401(d) Sentencing Commission Comments (1990). This presumption, however, is conditioned upon an affirmative showing in the record that the

**462**

trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

■ A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated section 40–35–210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and

(6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

Tenn.Code Ann. section 40–35–210(b) (1990).

In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range.

The record shows that at the sentencing hearing the trial court made the following statement: "[f]rom the facts of the case, and the seriousness of it, and this person nearly losing his life, takes it out of the status of the minimum sentence, with his participation in the store, although he didn't do the gun himself. So the sentence range in this will be ten years on each count, but they will run concurrently with his credit for all the time that he's been in jail. And that will be to

serve." We note that this statement by the trial court does not fully meet the requirement that the court include specific findings of fact upon which application of the sentencing principles was based. Tenn.Code Ann. section 40–35–209(c) (1990). In the interest of judicial economy, we choose not to remand for the making of said specific findings regarding each sentence.

■ The only mitigating factor which might be supported by the record in this cause is that the Appellant acted under the domination of another person. Tenn.Code Ann. section 40–35–113(12) (1990). The only evidence to support this factor is the testimony of the Appellant at the trial. The court found no mitigating factors, and obviously gave little credibility to the testimony of the Appellant.

From this record, we conclude that the court found as enhancing factors for the robbery of the victim who was shot that the personal injury inflicted upon the victim was particularly great and that the defendant possessed a firearm during the commission of the offense. Tenn.Code Ann. section 40–35–114(6) & (9) (Supp.1993).

*Either* the use of a deadly weapon *or* the victim suffering serious bodily injury is necessary to support a conviction of aggravated robbery. Tenn.Code Ann. section 39–13–402 (1991). The record in this case clearly supports the existence of both factors.[3] If only one factor had been present, that factor could not be used as a sentence enhancer, because it had already been used to elevate the offense of robbery to aggravated robbery. With both factors present any error of the trial court in considering an elevating factor to be an enhancing factor is harmless. For the aggravated robbery of the victim who was shot, we find the sentence of the trial court was within the court's discretion and was proper under the circumstances of this case.

■ As to the sentence for the aggravated robbery of the victim who was not

---

**3.** In fact, the evidence in this case would support a jury conviction of especially aggravated robbery. Tenn.Code Ann. § 39–13–403 (1991).

injured, we find no enhancement factors present. The use of the deadly weapon had already been applied to elevate the offense to aggravated robbery. In every aggravated robbery, the risk to human life is high and the potential for bodily injury to a victim is great. Elements of the crime may not be used to enhance the sentence. *See State v. Wallen,* No. 03C01–9210–CR–00345, slip. op. at 12, 1993 WL 263059 (Tenn.Crim.App. Knoxville, filed July 13, 1993). When there are no enhancement or mitigating factors, the presumptive sentence is the minimum sentence in the range. Tenn.Code Ann. section 40–35–210(c) (1990). The range of sentencing available in convictions for aggravated robbery is from eight to twelve years for a Range I Standard Offender. The sentence for the aggravated robbery of the victim who was not shot should be modified to eight years.

The defendant's conviction of two counts of aggravated robbery are affirmed. The sentence of ten years for one count is affirmed. The sentence on the other count is modified to eight years, to be served concurrently with the first. This case is remanded solely for the entry of an order consistent with this opinion.

WADE and TIPTON, JJ., concur.