# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 26, 2011

## ALONZO FELIX ANDRES JUAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 277633      Barry Steelman, Judge**

---

**No. E2010-02147-CCA-R3-CD - Filed July 12, 2011**

---

In 1992, the Petitioner, Alonzo Felix Andres Juan, was convicted of first degree murder and theft of property of a value of $600.00. He was sentenced to concurrent terms of life imprisonment and eleven months and twenty-nine days. This Court affirmed his convictions on direct appeal. See State v. Alonzo Felix Andres Juan, No. 03C01-9211-CR-00382, 1993 WL 310702 (Tenn. Crim. App., Knoxville, Aug. 17, 1993), perm. to appeal denied, (Tenn. Dec. 6, 1993). The Petitioner filed a petition for error coram nobis relief in September 2010, however, the error coram nobis court summarily dismissed his petition without conducting an evidentiary hearing. After our review, we affirm the summary dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, SP. J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Alonzo Felix Andres Juan, Appellant, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General, and William H. Cox, III, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

In the Petitioner's direct appeal, this Court summarized the facts as follows:

[T]he [Petitioner] is a native American Mayan from Guatemala. He rode to Chattanooga from the Stevenson, Alabama area with two other migrant workers, Julio Juan and Guillermo Juan.

They were in Julio's car. When they arrived in Chattanooga they parked the car behind the residence of a Mexican acquaintance, and immediately walked to a nearby tavern and commenced drinking beer and socializing.

The [Petitioner] left the tavern either with the victim or shortly after the victim left with Guillermo Juan. The victim, who was a middle-aged African-American female, was viciously assaulted in the back yard of a nearby house. According to the [Petitioner], Guillermo Juan was there kicking and beating the victim about the face and head; and then coerced him by threats and got him to strike her, too. The two men dragged the victim into the house; where she was stabbed to death. Three bloody knives were recovered by the police at the scene. The [Petitioner] claimed that Guillermo used a knife in each hand. He admitted holding the third bloody knife, but denied stabbing the victim.

[The Petitioner] and Guillermo immediately took Julio's car and fled. They were arrested in Florida. Both gave statements. Prior to [the Petitioner]'s trial, Guillermo enter a plea of guilty to second degree murder.

[The Petitioner]'s argument is that the State did not prove the requisite premeditation, the coolness and reflection, necessary to first degree murder.

The State's position is that the evidence showed that Guillermo Matias Juan premeditatedly killed the victim, and that the [Petitioner] acted in concert with him. [The Petitioner] contends that the State did not prove premeditation, coolness of mind or reflection on the part of Guillermo Juan.

. . . .

Very shortly after Guillermo left the tavern with the victim, when they reached the back yard of a nearby house, he commenced viciously beating and kicking her. Upon his arrival at the scene the [Petitioner] took off his belt and commenced beating the victim with it. Both men kicked her with booted feet. They dragged her into the house for the clear purpose of there killing her. She was stabbed numerous times.

-2-

A jury could reasonably conclude that this vicious crime was planned before the actors left the tavern. There is no question but that the victim was dragged from the back yard, where she was already beaten into a state of near helplessness, into the house to be slaughtered there.

Even if the [Petitioner] did not himself premeditate and deliberate regarding the murder, there was ample evidence that he acted with the intent to promote or assist in the commission of the murder and is by statute criminally responsible for that offense. T.C.A. Section 39-11-402. His thesis that he acted out of fear of Guillermo was rejected by the jury.

In our view of the evidence any rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. Thus, the legal sufficiency of the convicting evidence passes the relevant appellate test. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Rule 13(e), Tenn. R. App. P.

The second issue grows out of the fact that the [Petitioner] subpoenaed Guillermo Matias Juan to testify. Guillermo's attorney invoked his Fifth Amendment right not to testify. The learned trial judge correctly ruled that the witness could not be forced to testify. [The Petitioner] contends that since the witness had entered a plea to second degree murder and been sentenced that he had no right to remain silent.

The trial judge was influenced by the fact that Guillermo expressed the intention to file a petition for post-conviction relief. In an analogous situation, our Supreme Court held in State v. Dicks, 615 S.W.2d 126 (Tenn.1981)[,] that immunity from testifying persisted while the witness's case was on appeal.

The State points out that Guillermo could still be liable for other offenses arising out of this episode. This is unquestionably true, should facts previously unknown to the prosecuting officials come to light. Attempted rape, conspiracy, robbery and burglary are all offenses that this witness obviously might be guilty of. In the final analysis, the witness and his attorney have determined that answers to questions in this case might tend to incriminate him. We cannot require him to reveal the precise basis for this reliance upon his constitutional right not to incriminate himself, or he would lose that right in the process. A witness's right against self-incrimination is paramount to a litigant's right to compulsory process. State v. Dicks, 615

-3-

S.W.2d 126, 129 (Tenn. 1981). See also State v. Burns, 777 S.W.2d 355 (Tenn. Crim. App. 1989). As an aside, the statement of this witness, filed for identification, clearly incriminated the [Petitioner]. Also, the trial judge offered to allow the statement of facts agreed to by the would-be witness at the time of his guilty plea to be introduced, but the [Petitioner] declined.

State v. Alonzo Felix Andres Juan, No. 03C01-9211-CR-00382, 1993 WL 310702, at *1-3 (Tenn. Crim. App., Knoxville, Aug. 17, 1993), perm. to appeal denied, (Tenn. Dec. 6, 1993).

The Petitioner subsequently filed a petition for post-conviction relief and, after an evidentiary hearing was conducted, the post-conviction court dismissed his petition. This Court affirmed the dismissal pursuant to Rule 20 of the Rules of the Court of Criminal Appeals. Alonzo Felix Andres Juan v. State, No. 03C01-9601-CR-00048, 1996 WL 467689, at *1 (Tenn. Crim. App., Knoxville, Aug. 13, 1996), perm. to appeal denied, (Tenn. Feb. 10, 1997).

On September 16, 2010, the Petitioner filed a petition for writ of error coram nobis. He based his petition upon alleged newly discovered evidence, specifically a letter that Guillermo Juan, his co-defendant, wrote to him on June 13, 2010, and an affidavit Guillermo Juan signed on July 19, 2010. With his petition, the Petitioner also included an audio recording of Guillermo Juan's parole hearing in May 2010. During the hearing, Guillermo Juan told the parole officer that he, not the Petitioner, killed the victim. At the conclusion of the hearing, the parole officer stated that he was going to recommend that Guillermo Juan be paroled to the federal immigration authorities, who had placed a detainer hold on him.

The June 13, 2010 letter that Guillermo Juan purportedly sent to the Petitioner states, in pertinent part, as follows:

How are you doing today? I hope you are doing all right. Sorry brother it has been so long since I wrote you. Brother I feel so bad about leaving you in this prison. I wish both of us would get deported back to Guatemala [at] the same time. I am sorry about doing you like this. I think you should be the one who deserves to get deported and not me because you are a[n] innocent person. I wish I had never of killed that woman. I wish I could just let her take my money because I always can make my money back. I don't know what I was thinking. . . . I was going to testif[y] on your behalf. I was going to tell them that you didn't stab that woman that I was the one who stabbed her, but my lawyer would not let me. She said if you do that you would never get out of prison. That's why I didn't help you my brother. . . .

-4-

Guillermo Juan's affidavit states, in part, the following:

4. That I solely committed the murder in this case after having been drinking and having recognized and believed that the victim in the case had tried to steal my money;

5. That I solely after the fact, in panic, took the victim's vehicle and only I drove the vehicle;

6. That Alonzo Felix Andres-Juan never at any time took anything from the victim, never stabbed the victim nor ever even drove the victim's car;

7. That although Alonzo Feliz Andres-Juan was charged with me in this case and convicted of first degree murder he is actually 100% innocent of these charges as he had absolutely no knowledge that I was going to kill the victim nor did he attempt to stab nor did he stab the victim at any time[.]

On September 30, 2010, in an order dismissing the petition, the error coram nobis court found as follows:

Assuming *arguendo* that the co-defendant's recent admissions regarding the [P]etitioner's role in the victim's death constitute new, credible evidence, the [c]ourt considers whether they have judgment-affecting potential. By his own account, the [P]etitioner joined in the attack on the victim outside, removing his belt, striking her with it, and kicking her, helped drag her inside, and, though he did not stab her himself and did tell the co-defendant not to kill her, held one of the knives that the co-defendant used to stab her.

As the analysis of the sufficiency of the evidence of first-degree murder by the Court of Criminal Appeals reflects, the validity of the conviction for first-degree murder does not depend on whether the [P]etitioner did or did not stab the victim himself. His joinder in the co-defendant's initial attack on the victim and his subsequent assistance to the co-defendant in the co-defendant's fatal attack on the victim constitute a sufficient predicate for application of the theory of criminal responsibility.

Likewise, although the sufficiency of the evidence of theft of property was not an issue on direct appeal, the validity of the conviction for theft of property does not depend on whether the [P]etitioner did or did not drive the

vehicle himself. Presumably, that he did not drive reflects no more than that he could not drive. His joinder in the co-defendant's flight constitutes a sufficient predicate for application of the theory of criminal responsibility. The evidence in issue not negating the criminal-responsibility elements of the [P]etitioner's offenses, the [c]ourt finds it does not have judgment-affecting potential.

The [c]ourt observes that none of the new evidence explains the [P]etitioner's participation in the offenses or flight. There is still no corroboration of his claim of duress.

As for the co-defendant's new claim of provocation, the [c]ourt finds it incredible that the co-defendant did not claim provocation before. Even were the new claim credible, however, the [c]ourt does not regard it as having judgment-affecting potential, beating and stabbing a prostitute to death being a grossly disproprtionate response to the provocation of "having recognized and believed that [she] *had tried* to steal [an unspecified amount of] money[.]" Exhibit C, para. 4 (emphasis added).

The [c]ourt concludes that the subject petition does not state a claim for the writ of error *coram nobis* and should be dismissed.

(footnote omitted). It is from this order dismissing his petition that the Petitioner now appeals.

## Analysis

In this appeal, the Petitioner raises the following issues: (1) The error coram nobis court abused its discretion when it dismissed the Petitioner's petition without appointing counsel and conducting an evidentiary hearing; (2) The error coram nobis court did not use the appropriate standard when it denied relief; (3) The error coram nobis court abused its discretion when it found that the Petitioner was not entitled to relief; and (4) The error coram nobis court should have recused itself. We choose to combine the first three issues in our analysis but will address the fourth issue separately.

## I. Dismissal of the Petition

Tennessee Code Annotated section 40-26-105 provides a mechanism, a writ of error coram nobis, in which some convicted criminal defendants may be able to obtain relief. However, our supreme court has noted that "[t]he writ of error coram nobis is an extraordinary remedy known more for its denial than its approval." State v. Mixon, 983

S.W.2d 661, 666 (Tenn. 1999). Our writ of error coram nobis statutue provides, in pertinent part, as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b).

In State v. Vasques, 221 S.W.3d 514, 525 (Tenn. 2007), our supreme court noted that "Tennessee courts have struggled with the proper standard to be applied in the determination of whether and when coram nobis relief is appropriate in a criminal case." The court further explained that some courts had looked at whether new evidence "would have" resulted in a different judgment and some courts had used a "may have" standard. Id. Our high court reasoned that "the 'may have' standard, if interpreted literally, is too lenient in the common law context of writ of error coram nobis." Id. a 527. Thus, in Vasques, the Tennessee Supreme Court clarified the standard that should be used, explaining as follows:

> [W]e hold that in a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result. In the Court of Criminal Appeals opinion in this case, Judge Joseph M. Tipton described the analysis as follows: "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." Although imprecise, our standard, which requires determination of both the relevance and the credibility of the discovered information, offers a balance between the position of the State and that of the defense. In our view, this interpretation upholds the traditional, discretionary authority of our trial judges to consider the new evidence in the context of the trial, to assess its

veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome.

Id. at 527-28. "The decision to grant or deny a petition for the writ of error coram nobis on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court." State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

The statute of limitations for a petition seeking a writ of error coram nobis is one year after the judgment becomes final. See Tenn. Code Ann. § 27-7-103. However, "the State bears the burden of raising the bar of the statute of limitations as an affirmative defense." Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003). In the instant case, the State has not raised the statute of limitations as an affirmative defense.

While we acknowledge that our supreme court has said, "Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing," Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003), we note that filing a petition for a writ of error coram nobis does not automatically grant the Petitioner an evidentiary hearing on the matter. See Teague v. State, 772 S.W.2d 915, 922 (Tenn. Crim. App. 1988) (concluding that the coram nobis court did not err when it failed to hold an evidentiary hearing and noting that "the petitioner failed to establish that he was entitled to an evidentiary hearing regarding this issue"); Cole v. State, 589 S.W.2d 941, 943 (Tenn. Crim. App. 1979) (finding that the coram nobis court did not err when it failed to hold an evidentiary hearing regarding a post-trial statement from the victim because the statement was not "newly discovered evidence"). In Richard Hale Austin v. State, this Court explained as follows:

> Similar to habeas corpus hearings, coram nobis evidentiary hearings are not mandated by statute in every case as the petitioner argues. Specifically, a "habeas corpus petition may be dismissed without a hearing, and without the appointment of counsel for a hearing" if the petition does not allege facts showing that the petitioner is entitled to relief. State ex rel. Edmondson v. Henderson, 421 S.W.2d 635, 636 (Tenn. 1967) (citing State ex rel. Byrd v. Bomar, 381 S.W.2d 280 (Tenn. 1964)). Likewise, a coram nobis petition must state a claim for coram nobis relief and satisfy the threshold statutory requirements before the court holds an evidentiary hearing to determine whether the petitioner is entitled to coram nobis relief.

No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, at *5 (Tenn. Crim. App., Jackson, Dec. 13, 2006).

After reviewing the record, we conclude that the error coram nobis court did not abuse its discretion when it dismissed the Petitioner's petition for writ of error coram nobis without appointing counsel or conducting a hearing. The error coram nobis court assumed that the Petitioner's co-defendant's letter and affidavit constituted new and credible evidence and evaluated whether such evidence had "judgment-affecting potential." The lower court correctly noted that, although the evidence presented at trial did not indicate that the Petitioner stabbed the victim himself, he was criminally responsible because he acted with the intent to promote or assist Guillermo Juan in her murder. The proof at trial showed that the Petitioner struck the victim with his belt, kicked her, helped Guillermo Juan drag the victim inside the house, and held one of the bloody knives that Guillermo Juan used to stab the victim. The Petitioner then fled with Guillermo Juan in Julio's car, and they were later apprehended together in Florida.

The error coram nobis court did not err when it concluded that, even if Guillermo Juan's purported letter and affidavit are taken as true, they do not present any new evidence that may have led to a different result at the Petitioner's trial. Guillermo Juan's letter stated that he was the one that stabbed the victim. However, that was consistent with the evidence presented at the Petitioner's trial. Similarly, in Guillermo Juan's affidavit, he stated that the Petitioner did not drive the stolen vehicle nor did he stab the victim. We agree with the error coram nobis court that none of the "new evidence" presented by the Petitioner in this petition demonstrates that his trial may have resulted in a different judgment. Therefore, the error coram nobis court did not err when it summarily dismissed the Petitioner's petition without a hearing because, even taking all the evidence as new and credible, no facts were alleged that entitled the Petitioner to relief.

Finally, regarding the Petitioner's argument that the error coram nobis court "used the wrong standard" when denying his petition, we conclude that this issue has no merit. In Vasquez, our supreme court instructed that the trial court should "determine whether the new evidence may have led to a different result." 221 S.W.3d at 527. Our highest court also stated that the trial judges should "consider the new evidence in the context of the trial, to assess its veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome." Id. at 528.

In its order, the error coram nobis court concluded, "The evidence in issue not negating the criminal-responsibility elements of the [P]etitioner's offenses, the [c]ourt finds it does not have judgment-affecting potential." It appears that the Petitioner is arguing that, because the error coram nobis court did not use the word "may" in the preceding sentence, it used the wrong standard. We conclude that there is no merit to his argument. In its order, the error coram nobis court quoted from Vasques and acknowledged that Vasques set the standard by which to evaluate petitions for a writ of error coram nobis. After reviewing the

"new evidence" under the proper standard, the error coram nobis court concluded, just as this Court does, that the "new evidence" does not have any judgment-affecting potential. In our view, the error coram nobis court did not employ the wrong standard when evaluating the Petitioner's case. The Petitioner is not entitled to relief on this issue.

## II. Recusal

The Petitioner argues that "[t]he error coram nobis court should have recused itself and/or conducted a hearing in relation to whether Judge Barry Steelman was possibly an Assistant District Attorney and/or the Executive District Attorney while the cases of either the Petitioner and/or that of the co-defendant were being handled by the Hamilton County [District Attorney's] Office." The Petitioner asserts that, because his petition was summarily dismissed, he had no opportunity to find out which judge was assigned his case and, therefore, had no opportunity to previously raise this issue.

"[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned." State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995); see also Tenn. R. Sup. Ct. 10, Canon 3(E)(1)(a) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding."). However, this Court has stated that "a judge need not disqualify himself or herself from hearing a criminal matter which was pending at the time when he or she served as an assistant district attorney in the same judicial district, if the judge neither reviewed, personally prosecuted, nor had any direct involvement in the case." State v. Margo Ellis, No. W2000-02242-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 579, at *6 (Tenn. Crim. App., Jackson, July 19, 2001).

We recognize that the Petitioner has not had an opportunity to raise this issue prior to his appeal and are mindful that, under certain facts, it would be prudent for this Court to remand such an issue to the error coram nobis court for further proceedings. See, e.g., John C. Wells, III v. State, No. M2002-01303-CCA-R3-PC, 2003 WL 21713423, at *3 (Tenn. Crim. App., Nashville, July 23, 2003) (noting that this Court remanded the case to the post-conviction court for additional findings regarding the petitioner's allegation that the judge was a Deputy District Attorney at the time of his conviction). However, this is not such a case. In his brief, the Petitioner states that the error coram nobis judge "was possibly" an Assistant District Attorney at the time his, or his co-defendant's, case was being prosecuted. However, the Petitioner made no effort to submit documentary evidence to factually support his claim of a "possible" conflict of interest. He has not asked to supplement the appellate

record with any kind of documentation supporting his broad allegations. The Petitioner is not entitled to relief on this issue.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the dismissal of the Petitioner's petition for writ of error coram nobis.

_____
DAVID H. WELLES, SPECIAL JUDGE