# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2004

## STATE OF TENNESSEE v. CHARLES R. TURNER

**Appeal from the Criminal Court for Davidson County**
**No. 2002-C-1790     Carol Soloman, Judge**

---

**No. M2003-02064-CCA-R3-CD - Filed December 1, 2004**

---

The Appellant, Charles R. Turner, was convicted by a Davidson County jury of two counts of identify theft and sentenced to concurrent sentences of three years, with service of one year in confinement. In addition, Turner was ordered to pay restitution. On appeal, Turner raises four issues for our review: (1) whether the trial court erred by failing to suppress an in-court identification by a witness; (2) whether the evidence was sufficient to support his convictions; (3) whether the trial court imposed excessive sentences; and (4) whether the trial court erred in determining the amount of restitution. After review of the record, we conclude that the identification issue is without merit and the evidence is legally sufficient to support the convictions. Accordingly, we affirm the judgments of conviction. However, after review, we conclude that the trial court failed to sentence the Appellant in accordance with the 1989 Sentencing Act and to properly determine the Appellant's ability to pay the ordered restitution. Accordingly, we remand the case for a proper determination of these sentencing issues.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed in Part;
### Reversed in Part and Remanded

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Emma Rae Tennent (on appeal) and Rebecca Warfield (at trial), Assistant Public Defenders, Nashville, Tennessee, for the Appellant, Charles R. Turner.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Michelle Chapman McIntire, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Ryan D. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

On the dates the crimes were committed, the Appellant was employed by Music Land Motors as a car salesman. While employed at other car dealerships in the Nashville area, the Appellant had come into contact with both victims, Lawrence Pillow and Darrell Grimes, when they purchased cars from him.[1] During the purchase of the vehicles, each victim gave the Appellant the information necessary for him to check their credit rating, including social security number, driver license number, employment history, date of birth, and address. Neither victim did business with the Appellant at Music Land Motors.

In May 2002, a man purporting to be Lawrence Pillow called the 1-800-Loan-by-Phone program at South Trust Bank and initiated a loan application. After being approved for a $4,100.00 loan, the paperwork was sent to the local bank branch in order to close the loan. A man claiming to be Pillow and presenting a driver license identification came to the bank late in the afternoon on May 28, 2002. Brenda Hess, a loan specialist with the bank, spoke with the man for approximately fifteen minutes but did not feel comfortable issuing the check despite the identification. She testified that the man could not remember his social security number, did not resemble the picture on the driver license, kept his head down while talking, and refused to take his hat off the first time she asked. Additionally, Hess noted that the driver license presented to her was a duplicate license and was only a month old. She further noted that the Metro School Board check stub presented to verify employment was not a form which she recognized. Hess testified that she did not believe that the man was Lawrence Pillow and, as a result, asked him to come back the next morning to complete the loan when her manager would be in. The man left the bank and did not return. Hess identified the Appellant at trial as the man she spoke with.

Pillow was contacted by South Trust Bank and informed that someone was attempting to borrow money in his name. The bank presented Pillow with security photos of the person, but he was initially unable to recognize the Appellant. Pillow ran his credit history and learned that someone at Music Land Motors had checked his credit in April 2002. He then spoke with the general manager of Music Land Motors, who identified the Appellant as the person in the security photos. Pillow later discovered that a duplicate driver license had been issued in his name on April 23, 2002.

In June 2002, a man using the name Darrell Grimes originated a $4,500.00 loan through the 1-800-Loan-by-Phone program at AmSouth Bank. The paperwork was then sent to the local Nashville office, where loan officer David Hayes attempted unsuccessfully to contact the applicant at the phone number listed on the application. A short time later, a man purporting to be Darrell

---

[1]The Appellant was employed at Music Land Motors from March 2002 until June 2002. In May 2001, the Appellant, while employed at Crown Ford, sold a car to Pillow. Grimes had previously purchased several cars from the Appellant while employed at various Nashville dealerships.

Grimes came into the bank and spoke with Hayes. He presented a driver license bearing the name Darrell Grimes and signed the necessary loan paperwork. Hayes spent approximately forty-five minutes with the person and even convinced him to open a checking account, which he did in the name of Darrell Grimes. Part of the loan funds were placed in the checking account, with the remainder being distributed in cash. Hayes noted that there was some discrepancy in the appearance of the person present and the driver license photo. However, after checking with another employee, the two agreed that there was enough of a resemblance that it could be the same person.

Hayes saw the person a few days later when he returned to the bank attempting to withdraw funds from the new checking account. The person had no identification with him but, because Hayes recognized him as "Darrell Grimes," he was allowed to cash the check. Hayes identified the person who purported to be Darrell Grimes as the Appellant.

Grimes learned about the incident when he contacted AmSouth Bank after receiving a letter informing him that a line of credit had been issued in his name. Upon further investigation, Grimes learned that a duplicate copy of his driver license had been issued on June 11, 2002. He also ran his credit history and learned that his credit had been checked at Music Land Motors. Upon speaking with the general manager there, Grimes was informed that it was the Appellant who had conducted the credit check.

In September 2002, a Davidson County grand jury returned an indictment against the Appellant charging him with two counts of identity theft, class D felonies. Following a jury trial, the Appellant was convicted as charged. At an April 30, 2003 sentencing hearing, the trial court sentenced the Appellant to two concurrent sentences of three years, with one year to be served in confinement. Additionally, the court ordered the Appellant to pay restitution of $4,500.00 to AmSouth Bank, $1,100.00 to Lawrence Pillow, and $3,000.00 to Darrell Grimes for their pecuniary losses. The Appellant's motion for a new trial was denied, with this appeal following.

**Analysis**

On appeal, the Appellant has raised four issues for our review: (1) whether the trial court erred by failing to suppress an in-court identification by a witness; (2) whether the evidence was sufficient to support his convictions; (3) whether the trial court imposed excessive sentences; and (4) whether the trial court erred in determining the respective awards of restitution.

## I. Suppression of In-Court Identification

First, the Appellant contends that the trial court erred in denying his motion to suppress based upon what he refers to as an "unconstitutional pre-trial identification by the witness Brenda Hess." In reviewing suppression issues, we will affirm the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, in reviewing a trial court's ruling on a motion to suppress, this court may consider proof adduced at both the suppression hearing and at trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

In compliance with a subpoena, Hess appeared in the courtroom on the first day of the Appellant's scheduled trial. Hess was present in the courtroom while pre-trial motions were being heard in this case, and the Appellant, who was the only African American in the courtroom, was seated at counsel's table with his attorneys. The Appellant argues that this pre-trial confrontation was unduly suggestive and, as a result, that Hess' subsequent in-court identification was tainted and should have been suppressed. In support of this argument, the Appellant relies upon the United States Supreme Court decision in *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972).

We find no State action in arranging the courtroom "confrontation" between Hess and the Appellant. We reject the argument that the issuance of a subpoena which compels a witness to appear, thus permitting the witness to view the accused at trial, is the functional equivalent of an improper show-up.

"It is well settled in Tennessee law that in the absence of state action in the identification process, constitutional due process rights are not implicated; therefore, the analysis adopted by the United State Supreme Court in *Neil v. Biggers* is not appropriate." *State v. Reid*, 91 S.W.3d 247, 272 (Tenn. 2002); *State v. Drinkard*, 909 S.W.2d 13, 15-16 (Tenn. Crim. App. 1995) (refusing to find the identification unduly suggestive and violative of due process because the police did not arrange the confrontation between the defendant and the witness) (citing *State v. Dixon*, 656 S.W.2d 49, 51 (Tenn. Crim. App. 1983)). An inadvertent or accidental meeting involves no abuse of the identification process. *State v. Burns*, 777 S.W.2d 355, 358 (Tenn. Crim. App. 1989).

In a related issue, the Appellant also argues that "a substantial likelihood existed that the witness misidentified the [Appellant]." We also find this conclusory argument without merit. Hess testified that she spent approximately fifteen minutes in close proximity with the Appellant when he came into the bank to obtain the loan. She also testified that in the course of her job she had received training to observe people in situations such as these and that she had carefully observed the Appellant. Additionally, Hess testified that she was positive that the Appellant was the person who impersonated Lawrence Pillow. She also noted that, when she first saw the Appellant in the courtroom on the day of trial, he was sitting in a group with more than thirty people and that she immediately picked him out.

The Appellant was permitted to cross-exam Hess with regard to her memory and the length of time since she had seen the Appellant commit the crime. The issue became one of credibility for the jury, who we must presume was properly instructed with regard to eyewitness identification testimony. We conclude that the identification testimony was properly admitted.

## II. Sufficiency of the Evidence

Next, the Appellant contends that the evidence presented at trial was insufficient to support his two convictions for identity theft. Specifically, the Appellant contends the evidence with regard to the identity of the perpetrator was insufficient to establish that he committed the crimes.

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

"A person commits identify theft who knowingly transfers or uses, without lawful authority, a means of identification of another person with the intent to commit, or otherwise promote, carry on, or facilitate any unlawful activity." Tenn. Code Ann. § 39-14-150(a) (2003). A "means of identification" includes "any name or number that may be used to identify a specific individual, including" their name, social security number, date of birth, official state or government issued driver license or identification number. Tenn. Code Ann. § 39-14-150(b)(1).

The Appellant does not dispute that someone acquired duplicate driver licenses for both Lawrence Pillow and Darrell Grimes and then presented themself to the banks in order to acquire, or attempt to acquire, loan proceeds without the knowledge or consent of the victims. The Appellant merely argues that the proof is insufficient to show beyond a reasonable doubt that he was that person. Specifically, the Appellant argues that the only testimony directly identifying him as the perpetrator came from Brenda Hess and David Hayes, the two loan officers. The Appellant asserts that Hess' testimony should not have been admitted because it was tainted by a pre-trial identification of the Appellant and was, therefore, unreliable. Additionally, he asserts that the testimony of David Hayes was unduly bolstered by Hess' testimony. He contends that had the trial court properly suppressed Hess' identification, Hayes' identification would have been insufficient to sustain the verdict. We disagree.

As previously determined, the identification testimony of Brenda Hess was properly admitted into evidence. The evidence before the jury established that Hess positively identified the Appellant as the person who presented himself to her as Lawrence Pillow, gave her a copy of Pillow's driver license, his social security number, and date of birth in an attempt to obtain a $4,100.00 loan. Hayes

also positively identified the Appellant as the person who presented himself as Darrell Grimes in order to obtain a $4,500.00 loan from AmSouth Bank. He testified that the Appellant presented a copy of Grimes' driver license, as well as verifying Grimes' address and social security number. Moreover, strong circumstantial evidence against the Appellant was presented to the jury. Both victims had purchased cars from the Appellant and had given him personal information necessary to check their credit, including social security and driver license numbers. Each victim's credit was checked, without authorization, at Music Land Motors, the dealership where the Appellant was employed, just prior to the issuance of duplicate driver licenses for both victims. There was also testimony from Hayes, Grimes, and a co-worker of the Appellant regarding a distinctive way that the Appellant held a pen. This evidence, when considered in the light most favorable to the State, is more than sufficient to support the Appellant's convictions. This issue is without merit.

### III. Excessive Sentencing

Third, the Appellant asserts that the trial court imposed excessive sentences in his case. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also State v. Jones*, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the Appellant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

The Appellant was convicted of two counts of identity theft, class D felonies, for which the appropriate sentence range is two to four years. Tenn. Code Ann. § 40-35-112(a)(4) (2003). The presumptive sentence to be imposed by the trial court for a class D felony is the minimum sentence within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c) (2003). If there are enhancement factors present but no mitigating factors, the court may set the sentence above the minimum. *Id*. at (d). If both enhancement and mitigating factors are present, the court must start at the minimum sentence, enhance the sentence as appropriate for the enhancement factors, then reduce the sentence for all applicable mitigating factors. *Id*. at (e). The weight given to each factor is left to the discretion of the trial judge. *Shelton*, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. *State v. Moss*, 727 S.W.2d 229, 237 (Tenn. 1986).

The Appellant contends that the trial court erred in imposing a sentence greater than the minimum of two years for each conviction and, further, that the trial court's sentencing decision is not entitled to the presumption of correctness because the court enhanced the sentences without specifying any statutory enhancement factors and failed to apply three applicable mitigating factors.

The trial court made the following pronouncements on the record prior to sentencing the Appellant:

THE COURT: . . . He shows no remorse, and according to 40[-]35-102 Defendant should be imposed to prevent crime of remote respect of the law. Well, with this gentleman's behavior pre and post trial it's undermined respect for the law because he has told his sister, at least, and I assume his other six siblings that he didn't do this act.

Therefore, what respect for the law can the children, and his family have for a judicial system that they now perceive to be unfair. Not only has he undermined Mr. Grimes, and Mr. Pillow, he's undermined the legal system, or the justice system, and that is almost as distracting as the personal problems that Mr. Pillow, and Mr. Grimes have suffered. . . .

It says it is also to encourage a federal rehabilitation for the Defendant. Well, since the Defendant does not admit to his offense, and shows absolutely not a smithereens of remorse, the rehabilitation process is going to have to be altered. I am going to sentence him to pay the restitution of the victims. The potential for rehabilitation pursuant to 40[-]35-13 section 45 without a long sentence, I don't think [the Defendant] would be rehabilitated. Therefore, I wish I could sentence him to more, but I'm going to sentence him to two three year terms to run concurrent, which I regret, but I have no other choice.

After review, it is apparent that the Appellant is correct that the trial court failed to specify on the record its application of any enhancement or mitigating factors or even the appropriate sentencing range.[2] Tennessee Code Annotated section 40-35-210(f) mandates, "Whenever the court imposes a sentence, it shall place on the record either orally or in writing what enhancement or mitigating factors it found, if any, as well as findings of fact as required by Tenn. Code Ann. § 40-35-209." To facilitate appellate review, the trial court "must place on the record its reasons for

---

[2] The Appellant also alleges that the trial court erred by failing to apply mitigating factors. First, he asserts that the trial court should have applied factor (1), that the Appellant's criminal conduct neither caused nor threatened serious bodily injury. *See* Tenn. Code Ann. § 40-35-113(1) (2003). The State concedes that this factor should have been applied, and this court has previously concluded that mitigating factor (1) may be considered in sentencing determinations for property offenses. *State v. Daniel James Cosgrove*, No. M2001-02127-CCA-R3-CD (Tenn. Crim. App. at Nashville, Nov. 15, 2002), *perm. to appeal denied,* (Tenn. 2003).

Additionally, the Appellant asserts that the trial court should have applied mitigating factor (13), the catchall mitigator, based upon both his long record of stable employment and his strong supportive family ties in the community. *See* Tenn. Code Ann. § 40-35-113(13). We note that this court has stated that work ethic and family contribution are entitled to favorable consideration under Tennessee Code Annotated section 40-35-113(13). *State v. McKnight*, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994). Moreover, this court has held that employment should be considered in sentencing a defendant. *State v. Kelley*, 34 S.W.3d 471, 482-83 (Tenn. Crim. App. 2000). The trial court should consider the evidence presented and make a determination as to the application and weight of these factors, as well as any others which may be applied on the facts of the case.

arriving at the final sentencing decision, identify the mitigating and enhancement factor found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence." *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997); *see also* Tenn. Code Ann. § 40-35-210(f).

The record reflects that, in addition to failing to specify any statutorily enumerated enhancement factors, the trial court in enhancing the Appellant's sentence from two to three years appears to have considered the Appellant's lack of remorse, lack of respect for the law, and his amenability to rehabilitation, none of which are proper considerations in determining the length of a sentence. *See* Tenn. Code Ann. § 40-35-114 (2003). As the trial court is the primary court for sentencing, and because here the court failed to impose a sentence in accordance with sentencing guidelines, we remand for resentencing.[3]

## IV. Restitution Amounts

Lastly, the Appellant asserts that the trial court erred in ordering the Appellant to pay restitution in the following amounts: $4,500.00 to AmSouth Bank, $1,100.00 to Lawrence Pillow, and $3,000.00 to Darrell Grimes.

A sentencing court may direct a defendant to make restitution to the victim for pecuniary loss as a condition of probation. *See* Tenn. Code Ann. § 40-35-304(a) (2003); *State v. Alford*, 970 S.W.2d 944, 945 (Tenn. 1998). Whenever the trial court believes restitution may be proper or if the victim or the district attorney general requests restitution the court shall order the presentence officer to include documentation regarding the nature and amount of the victim's pecuniary loss in the presentence report. Tenn. Code Ann. § 40-35-304(b). The statute defines "pecuniary loss" to be:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed by the defendant; and
>
> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

*Id*. at (e). Special damages are those which are "the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence." *State v. Lewis*, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995). General damages are those which are "the necessary and immediate consequence of the wrong." *Id*.

---

[3] We note that the trial court's reconsideration of the Appellant's sentence should be conducted in view of the recent decision of the United States Supreme Court in *Blakely v. Washington*, 542 U.S.____, 124 S. Ct. 2531 (2004).

It is unnecessary for the sentencing court to determine restitution in accordance with the strict rules of damages applied in civil cases. *State v. Johnson*, 968 S.W.2d 883, 887 (Tenn. Crim. App. 1997). However, though the rules of damages are relaxed, they are not completely discarded. *State v. David D. Bottoms*, No. M2000-02080-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 31, 2001). The sum of restitution ordered must be reasonable but does not have to mirror or equal the precise pecuniary loss. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). There is no set formula or method for determining the amount. *Johnson*, 968 S.W.2d at 886. The sentencing court must consider not only the victim's loss, but also the financial resources and future ability of the Appellant to pay or perform in determining the amount and method of payment. Tenn. Code Ann. § 40-35-304(d); *State v. Bottoms*, 87 S.W.3d 95,108 (Tenn. Crim. App. 2001). An order of restitution which obviously cannot be fulfilled serves no purpose for the Appellant or the victim. *Johnson*, 968 S.W.2d at 886.

A victim seeking restitution must present sufficient evidence to allow the trial court to make a reasonable, reliable determination as to the amount of the victim's loss. *David D. Bottoms*, No. M2000-02080-CCA-R3-CD. General statements by a victim regarding the amount of his or her loss containing no explanation as to how the victim arrived at the amount are insufficient. *Smith*, 898 S.W.2d at 747. While a victim's testimony standing alone may be sufficient to establish special damages for the purposes of restitution, the victim should explain how he or she arrived at the amount of damages requested. Further, documentation supporting the victim's testimony is helpful.

When ordering restitution, the trial court shall specify the amount of time and payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). However, the court may not establish a payment or performance schedule which extends beyond the maximum statutory term of probation supervision that could have been imposed for the offense. *Id*.

**(a) AmSouth Bank**

With regard to AmSouth Bank, the Appellant concedes that the monetary losses resulting to the bank from the fraudulent loan were special damages and, thus, properly recoverable. However, he argues that the evidence presented failed to sufficiently establish that the bank suffered an actual pecuniary loss of $4,500.00. He asserts that the proof shows that while the original loan was for $4,500.00, the proof also established that the Appellant did not take the entire amount of the proceeds with him in cash but rather deposited part of it in a checking account.

We disagree with the Appellant's assertion and find the proof sufficient to establish that the Appellant received proceeds in the amount of $4,500.00 from a fraudulent loan. The State submitted loan documentation in the amount of $4,500.00. The loan officer, David Hayes, testified that the Appellant opened a checking account with part of the proceeds and took the remainder in cash. The record also establishes that the Appellant later withdrew $450.00 by check from the account. There is nothing in the record to indicate that the bank recovered any of their loss from the loan. The order of restitution is correct.

**(b) Lawrence Pillow/Darrell Grimes**

With regard to the amounts awarded Pillow and Grimes for lost wages during the prosecution and investigation of the case, as well as the wages they lost to procure new driver licenses, the Appellant asserts that the awarded amounts were not reasonable under Tennessee Code Annotated section 40-35-304(e)(2). That statute defines "pecuniary loss" to be "[r]easonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense[.]" Tenn. Code Ann. § 40-35-304(e)(2).

There is no dispute that lost wages are pecuniary losses under the restitution statute, as this court has recognized lost wages as part of a restitution order. *See State v. Vanderford*, No. 01-C-01-9101-CC-00004 (Tenn. Crim. App. at Nashville, Aug. 22, 1991); *State v. Cowart*, No. 01-C-01-9508-CC-00251 (Tenn. Crim. App. at Nashville, Nov. 22, 1996). Indeed, the Appellant acknowledges that lost wages are recoverable, but he asserts that part of the pecuniary loss in this case was for out-of-pocket expenses or lost wages the men incurred for matters other than those directly related to the prosecution of the case. *See* Tenn. Code Ann. § 40-35-304(e)(2). Specifically, the Appellant disputes the money awarded for lost wages when the victims were procuring new driver licenses.

While it may be true that the time the victims spent in having new driver licenses issued did not result "from the filing of charges or cooperating in the investigation and prosecution of the offense," the Appellant's argument appears to ignore sub-section (e)(1) of Tennessee Code Annotated section 40-35-304, which states that restitution may be ordered for a crime victim's "pecuniary loss," defined as all special damages substantiated by evidence in the record or as agreed to by the Appellant but not to include general damages. *See* Tenn. Code Ann. § 40-35-304(b), (e)(1) (2003).

Clearly, the lost wages disputed by the Appellant were special damages. The wages the victims lost while procuring new driver licenses were an actual result of the injury complained of, which followed as a natural and proximate consequence. The Appellant had duplicate driver licenses issued in the victim's names. If this had not occurred, no renewal of the licenses would have been required. Indeed, with regard to Mr. Grimes, the Appellant had his driver license classification changed, resulting in additional loss of wages.

The statute also requires that restitution be made only where special damages are "substantiated by evidence in the record." In this case, Pillow testified that he had missed a total of five days of work due to the Appellant's actions and that he made $225 per day. He specifically testified that he suffered approximately $1,100.00 in lost wages. Grimes testified that he missed twelve days of work due to the Appellant's conduct and that he earned approximately $1,400.00 per week. He testified that he easily lost $3,000.00 in wages. Thus, after reviewing the record, this court finds that the victims' testimony about their wages, which was unchallenged by the Appellant, was sufficient to warrant restitution for lost wages in the amounts ordered. The Appellant's issue is without merit.

Notwithstanding the proper awards, the record is silent with regard to any finding of the Appellant's ability to pay the ordered restitution during his period of probation. The record establishes that the Appellant is employed as a car salesman but no mention is made of his earnings. As this is a required finding prescribed by the statute, we must remand for a determination of the Appellant's ability to pay the ordered restitution within the scheduled period.

## CONCLUSION

Based upon the foregoing, we affirm the Appellant's judgments of conviction. The case is remanded to the Davidson County Criminal Court for determinations of the appropriate sentences and the Appellant's ability to pay the ordered restitution consistent with this opinion.

_____
DAVID G. HAYES, JUDGE