**STATE of Tennessee, Appellee,**

v.

**Angela Caprice PARCHMAN,
a/k/a Rosie, Appellant.**

Court of Criminal Appeals of Tennessee,
at Jackson.

Feb. 14, 1997.

No Permission to Appeal Applied
for to the Supreme Court.

Lance E. Webb, Union City, for Appellant.

Charles W. Burson, Attorney General and Reporter, Clinton J. Morgan, Assistant Attorney, Nashville, Thomas A. Thomas, District Attorney General, James T. Cannon, Assistant District Attorney General, Union City, for Appellee.

## *OPINION*

WELLES, Judge.

This is an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant was convicted by an Obion County jury of two counts of the sale of a controlled substance. She appeals her convictions and presents four issues for review: (1) That the trial court erred by denying the Defendant's motion for a new trial because the verdict was tainted by juror misconduct; (2) that the trial court erred in ruling that a post-trial confession was not newly discovered evidence such as to warrant a new trial; (3) that the trial court erred in ruling that an alibi witness was not newly discovered evidence such as to warrant a new trial; and (4) that the evidence was insufficient to support the convictions beyond a reasonable doubt. We find merit with the Defendant's argument that she is entitled to a new trial because of juror misconduct. We therefore reverse the judgment of the trial court and remand for a new trial.

During the months of May through October in 1994, the drug investigation unit of the Union City Police Department was conducting a "controlled informant buy" operation. They recruited paid informants to make drug purchases from individuals suspected of selling controlled substances. The informant in this case was outfitted with a wireless audio transmitter to record transactions in progress.

On May 31, 1994, the informant was recruited to buy $40 worth of crack cocaine from "Rosie", who lived at apartment 52, East College Court in Union City. The occupant of that apartment was Angela "Rosie" Parchman, the Defendant. The informant was familiar with the Defendant prior to the drug buy. At approximately 2:21 p.m. that day, the informant went to the apartment and a child opened the door, stating that Rosie was not there. He left the apartment, but then saw the Defendant arrive in her vehicle. The informant helped carry her groceries to the apartment. The Defendant offered a rock of cocaine for $80, but the informant was limited to the $40 purchase. He bought the cocaine and reported back to the investigators.

On July 20, 1994, the informant was employed to make another drug purchase from the Defendant. The informant was supplied with $100 to buy two rocks of cocaine. He went to the Defendant's apartment at 3:31 p.m. and made another buy from her. On both occasions, there were a number of other

persons playing cards in the Defendant's apartment. On July 20th, a woman named Rose Cannon, sometimes referred to as "Rosie", was allegedly present when the drug purchase was made.

The police investigation unit's recording of the transaction conducted on May 31st was somehow erased when a copy of the tape was made, although defense counsel had received a copy of poor quality. The July 20th tape was apparently in good condition. At trial, the informant identified Rosie Parchman, the Defendant, as the person from whom he bought the crack cocaine on both dates. The Defendant presented witnesses who were in her apartment on the two dates in question to identify the voices on both of the audiotapes. Two witnesses testified that Rose Cannon was in the apartment on July 20th and that the Defendant was not present when the drugs were sold on either occasion. Neither witness would confirm that Rose Cannon actually sold drugs to the informant. Rose Cannon testified, denying that she was in apartment 52 on either May 31st or July 20th.

The Defendant testified that she had a hair appointment and that she left the apartment between 12:30 and 1:00 p.m. on the afternoon of July 20th. She stated that she had her hair done, but returned to have it restyled because she was dissatisfied with it. She denied having returned to her apartment in the afternoon hours.

The Defendant was tried and convicted of one count of sale of cocaine under point five (.5) grams, a Class C felony, for the May 31, 1994 transaction and sentenced to 3 years in split confinement, with one year to be served in the county jail and two years to be served in community corrections. She was also convicted on the second count of sale of cocaine over point five (.5) grams, a Class B felony, for the July 20, 1994 transaction and sentenced to eight years in split confinement, with one year to be served in the county jail and the balance in community corrections. The sentences were ordered to be served concurrently. She appeals her convictions.

### Newly Discovered Evidence

We will first address Defendant's issues (2) and (3), that the trial court erred in ruling that evidence of a post-trial confession and an alibi witness were not newly discovered evidence warranting a new trial. The decision to grant or deny a new trial on the basis of newly discovered evidence is a matter which rests in the sound discretion of the trial court. *State v. Goswick*, 656 S.W.2d 355, 358 (Tenn.1983). To be entitled to a new trial based on newly discovered evidence, the defendant must demonstrate (1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence; and (3) that the evidence will likely change the result of the trial. *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn.1994); *Goswick*, 656 S.W.2d at 358–360. A new trial will not be granted on newly discovered evidence when the effect is merely to impeach a witness' testimony at trial unless the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission would change the outcome of the case. *State v. Singleton*, 853 S.W.2d 490, 496 (Tenn. 1993); *State v. Rogers*, 703 S.W.2d 166, 169 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1985).

First, the Defendant contends that Rose Cannon's admission that she committed the crime made to defense counsel after trial warrants a new trial. At trial, Rose Cannon testified as the State's rebuttal witness that she was not present in the Defendant's apartment on either occasion when the drug sales were transacted. There was other testimony at trial that Rose Cannon was indeed in the Defendant's apartment, that she spoke with the police informant, and could have conducted a drug sale.

After trial, defense counsel interviewed Rose Cannon, who was then in the Obion County jail where she was being held on charges of aggravated robbery. She listened to the tape of the July 20th drug sale at the Defendant's apartment and admitted that her voice was on the tape and that she sold the drugs. At the hearing on the motion for a new trial, she testified that she did not sell the drugs and that she only made that statement to help the Defendant. She asserted

that the Defendant told her that she would not get in trouble because two people could not be charged with the same crime, which induced her to confess to the crime. She testified that the Defendant offered to pay for her bond if she admitted to the crime. Rose Cannon was released on bond on the same day she spoke with defense counsel. Another witness testified that Rose Cannon said she was leaving town and that she alluded to the fact that someone in the jail was there rather than her because the police got the wrong person. There was nothing beyond this that specified that the drug sale was the crime she was referring to rather than the aggravated robbery or some other crime.

The Defendant contends that this is newly discovered evidence that, although impeaching a witness' testimony at trial, is crucial enough to warrant a new trial. The Defendant cites *State v. Burns*, 777 S.W.2d 355, 361 (Tenn.Crim.App.1989), in which this court held that a post-trial confession merited a new trial because it suggested that the individual committed the crime, rather than merely impeaching a witness. That individual was present at trial but refused to testify, invoking his 5th Amendment right against self-incrimination. There was no other suggestion at trial that he committed the crime.

In the case *sub judice*, there was testimony that placed Rose Cannon in the apartment when the drugs were sold. There was testimony that she may have conversed with the informant and that she may have conducted a drug transaction. She was a witness at trial and denied her involvement. The Defendant asserts that Rose Cannon's confession to the crime is new evidence that would affect the outcome of the trial. However, she also recanted her confession at the hearing on the motion for new trial. It is apparent that this issue was raised at trial during the Defendant's proof when witnesses testified that Rose Cannon was present and might be involved with the drug sale. Yet, her confession does appear to be newly discovered evidence. It does not necessarily follow that the new information was material or that it would change the outcome of the trial. We agree with the trial court's finding that Rose

Cannon's statements were conflicting, confusing, and possibly influenced by the Defendant. We cannot conclude that the evidence is so crucial to the Defendant's case that it warrants a new trial. This issue is without merit.

■ Second, the Defendant contends that the testimony of a newly discovered alibi witness warrants a new trial. She states that she did not remember where she was on July 20th during the time when the crime was committed, but that shortly before trial, she recalled going to the hairdresser that day. She contends that she was unable to locate the hairdresser to testify until after her trial. The State argues and the trial court observed that the Defendant did not request a continuance. The Defendant counters that any request would have been futile because Rule 12.02 of the Local Rules of Court for the 27th District precludes absence of a witness as grounds for a continuance unless the witness has been subpoenaed. It is clear that the Defendant did not even attempt to request a continuance, nor request a *subpoena instanter*, which makes it difficult to conclude that due diligence was exercised to produce the evidence. Assuming that due diligence was employed, we are not convinced that testimony from the hairdresser would be material to the Defendant's case. The Defendant testified at trial that she left for a hair appointment before 1:00 p.m., left and returned sometime later that afternoon to have her hair redone.

The hairdresser's affidavit states that the Defendant had an appointment scheduled at 1:30 p.m. on July 20th and that she was there for approximately one and a half hours having her hair done. He also stated that she returned later, but does not specify when. The time frame for the appointment and her return leaves a gap of time between 3:00 p.m. and the time when the Defendant returned within which she could have conducted a drug sale. This corroborates the Defendant's testimony, but leaves an unexplained time gap and does not provide evidence of such magnitude that it is material or that it would affect the outcome of the trial. This issue is without merit.

## Juror Misconduct

■ The Defendant argues that a juror's conversation with the bailiff during the jury's deliberations tainted the verdict and that therefore she is entitled to a new trial. At the Defendant's motion for new trial, the jury forewoman testified about the suspected extraneous influence. She testified that, during their deliberations, the jury had a question regarding verdicts. At that point, they had voted unanimously for guilt on one count of the indictment. On the other, the vote was eleven guilty to one not guilty. The jury had a discussion about whether a verdict would be required and made statements to the effect that the judge would send them back to deliberate. There was still a question about this and one male juror said "I'll go ask." He left the jury room and spoke with the bailiff. The forewoman looked out the door, saw them talking, but could not hear the conversation.

The male juror returned to the jury room and stated something to the effect of: "If we go back out the judge is just going to send us back in to come up with a verdict." At some point after another vote, although the forewoman was unsure whether they voted once or several times, the votes on the count in question were all for guilty. She could not confirm what effect, if any, the statement made by the male juror had on the other jurors during their deliberations. The bailiff testified that the male juror approached her and asked: "Can we find her guilty on one charge and innocent on the other?" The bailiff replied: "Yes." The bailiff reported no other conversation.

■ It is the law in Tennessee that an unexplained juror conversation with a third party is good cause for a new trial. *State v. Blackwell,* 664 S.W.2d 686, 689 (Tenn.1984). When there is extraneous prejudicial information or any outside influence is brought to bear on a juror, the validity of the verdict is questionable. *Id.*

In *Blackwell,* the Supreme Court adopted Rule 606(b) of the Federal Rules of Evidence and defined the type of evidence admissible from a juror to impeach a jury verdict. This holding, subsequently established as Rule 606(b) of the Tennessee Rules of Evidence,

prohibits a juror from giving testimony on any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon a juror's mind or emotion as influencing his or her vote except that a juror may testify on the question of whether any extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

■ If it is shown that one or more jurors has been exposed to extraneous prejudicial information or improper influence, there arises a rebuttable presumption of prejudice, and the burden then shifts to the prosecution to explain the conduct or to demonstrate the harmlessness of it. *Blackwell,* 664 S.W.2d at 689; *State v. Young,* 866 S.W.2d 194, 196 (Tenn.Crim.App.1992), *perm. to appeal denied, id.* (Tenn.1993). Examples of impermissible outside influence include reading prejudicial newspaper editorials during the jury's deliberation, the imparting of prejudicial information from a court officer having charge of the jury, or if the bailiff is present in the jury room during deliberations. *Montgomery v. State,* 556 S.W.2d 559, 562 (Tenn.Crim.App.), *cert. denied, Id.* (Tenn.1977).

In order to shift the burden to the prosecution to demonstrate the harmlessness of the communication with the jury, the threshold question is whether the statement communicated to the jury was prejudicial to the Defendant.

The Defendant asserts that a statement to the effect that the jury must "come up with a verdict" was prejudicial because it impermissibly imparted to the jury the idea that they could not end up with a "hung jury." Therefore, the Defendant argues that she was deprived of the chance that the jury might have been unable to reach a unanimous decision on the one count for which there was a lone holdout voting not guilty, eliminating the possibility of a mistrial.

The Supreme Court rejected the use of a jury charge that instructs minority voters to follow the majority voters. *Kersey v. State,* 525 S.W.2d 139, 144 (Tenn.1975). The court

prescribed the use of the ABA Standards Relating to Trial by Jury, Sec. 5.4 when there is jury deadlock. *Id.* at 144–45.

The instruction contemplated in Sec. 5.4(a) may be given as a part of the main charge and should be given in the following form:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, *or for the mere purpose of returning a verdict.*
>
> If given as a part of the main charge, it may be repeated should a deadlock develop.
>
> Judicial economy and uniformity demand these results. Strict adherence is expected and variations will not be permissible.

*Id.* at 145 (emphasis added).

The Defendant cites *State v. Crowder,* No. 01–C–019101–CR–00024, Jackson County, 1991 WL 155719 (Tenn.Crim.App., Nashville, Aug. 16, 1991), in which an improper statement by the bailiff warranted a new trial. In *Crowder,* the Defendant testified that he overheard the bailiff tell the jury, after they had posed a question to the judge, relayed by the bailiff, that they "had to reach a verdict." *Id.* at 3. The State offered the courthouse janitor as a rebuttal witness, who testified that the Defendant was not near the bailiff when the communication occurred and could not have heard it. *Id.* at 4.

Although the trial court credited the State's witness' testimony, a panel of this court found that once evidence was offered that the communication by the bailiff was improper, the burden shifted to the prosecution. *Crowder,* slip op. at 4. Because of the possibility that one of the jurors may have been improperly influenced to render a verdict finding the Defendant guilty, the presumption arose and the State was required to show either that the communication did not occur, or that it had no prejudicial effect on the jurors and was harmless. The court found that the State did not carry its burden to rebut the presumption. *Crowder,* Slip op. at 4.

In the case *sub judice,* it in undisputed that some communication was made between the bailiff and a male juror. Even if we were to accredit the testimony of the bailiff that she only communicated to the juror that they could return one guilty and one not guilty verdict, this does not eliminate the possibility that the jurors were influenced. What was stated to the jury was apparently that they had to reach a verdict. This was communicated by a juror who had just stepped out to ask a court officer a question about verdicts. Regardless of what the bailiff actually said, the impression given to the jurors was that the answer or confirmation supplied to them by the male juror originated from a court officer. This suggests that the jury was exposed to extraneous prejudicial information.

The trial court denied the Defendant's motion for new trial on this issue because the statement by the bailiff was a "proper statement of law." Further, he resolved the issue on whether the jury was affected as follows: "It would be completely speculative to determine or for the court to hold that the jury verdict was tainted upon the evidence before the court." However, when the improper communication was made, the taint of the jury verdict was *presumed.* Once the Defendant established an improper communication with the jury, she was not required to prove that an improper influence occurred. It is clear that an improper communication occurred. It was then the State's burden to affirmatively show that any contact was harmless.

The State presented no proof on the issue. It would have been possible to call the jurors to testify whether they were influenced by the statement relayed to them by the male juror. Also, the male juror could have confirmed that the statement made by the bailiff was not prejudicial, and this juror could have testified as to what statement he then made to the remaining jurors. However, for the above cited reasons, we cannot conclude that the error was harmless. We must reverse and remand this case for a new trial.

### Sufficiency of the Evidence

In her final issue, the Defendant contends that the evidence was insufficient to support the verdicts of guilt beyond a reasonable doubt. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim.App.), *perm. to appeal denied, id.* (Tenn.1987). Nor may this court reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Cabbage*, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982); *Grace*, 493 S.W.2d at 476.

The jury resolved any conflicts in the evidence in favor of the state. We find that the evidence was sufficient to support the elements of the crime of sale of controlled substance beyond a reasonable doubt. Nevertheless, we must reverse the judgment of the trial court for the reasons previously explained, and remand this case for a new trial.

JONES, P.J., concurs.

SMITH, J., concurs in results with separate opinion.

SMITH, Judge, concurring in results.

Regrettably, I must concur in the judgment of the majority opinion that this case be remanded for a new trial. However, I have reached this conclusion through a somewhat different rationale than that expressed by my colleagues.

The record in this case reflects clearly that one of the jurors had an improper conversation with the bailiff regarding the jury's options. However, the record also reflects that the substance of the bailiff's statement, i.e., that the jury could convict on one count of the indictment and acquit on the other, was not the information imparted to the other jurors. Indeed, this information is a correct statement of the law. Rather than report this information to the other jurors, the juror who spoke with the bailiff told the other members of the panel that if no verdict was reached the judge would send them back into the jury room until verdicts were obtained. Had the juror made this statement without speaking to anyone outside the jury concerning the jury's deliberations there would be no question the statement could not be used to question the result reached by the panel. See, Tenn.R.Evid. 606(b).

Thus, it is unfortunate that a lone juror saw fit to ask the bailiff for assistance in its deliberations rather than the entire jury making inquiry of the trial judge, as would have been the proper procedure. It is even more unfortunate that the bailiff saw fit to answer the questions asked of him. Because the bailiff's statement never reached the other jurors, and because it is correct in its assessment of the jury's options, it is highly unlikely the statement effected the verdict even though one lone juror had heard it.

Nevertheless, the integrity of the jury system demands that improper communication between jurors and non-jurors be avoided. I therefore am of the opinion that the misconduct of the juror and bailiff in this case resulted in prejudice to the judicial process and requires a new trial even though the misconduct in all probability did not alter the results of the trial. See, Tenn.R.App.P. 36(b); *State v. Perry,* 740 S.W.2d 723 (Tenn. Crim.App.1987).

For the reasons stated above I concur in the result reached by the majority.