# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. RUSSELL ALLEN

**Appeal as of Right from the Circuit Court for Maury County**
**No. 11, 192     Robert L. Jones, Judge**

___

**No. M2000-01656-CCA-R3-CD - Filed July 10, 2001**

___

The appellant, Russell Allen, was convicted in the Maury County Circuit Court of one count of aggravated sexual battery and was sentenced as a Range I offender to eight years incarceration in the Tennessee Department of Correction. On appeal, the appellant raises the following issue for our review: whether the trial court erred in failing to grant the appellant a new trial based upon newly discovered evidence. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Gary M. Howell, Columbia, Tennessee, for the appellant, Russell Allen.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Mike Bottoms, District Attorney General; and Lawrence R. Nickell, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On the afternoon of May 18, 1999, the appellant, Russell Allen, went to the home of a co-worker, Jan Moody. Only Moody's teenage daughter, M.M., was home at the time.[1] M.M. admitted the appellant into the home because she recognized him as a co-worker of her mother. When the appellant entered the home, he was carrying a bottle of Sun-Drop cola and Crown Royal whiskey. The appellant offered M.M. a drink of the alcohol and began following her through the house. M.M. refused the alcohol and told the appellant that her mother would be home shortly. The appellant then pulled a gun from his pocket and began loading it. Upon seeing the appellant's

___

[1] It is the policy of this court to refrain from using the name of a minor who has been the victim of a sex crime.

actions, M.M. became so afraid that she knelt, covered her head, and began crying. The appellant placed the gun to M.M.'s head, told her to remove her clothes, and ordered her to perform oral sex on him.

M.M. did as the appellant ordered. After a minute or two, M.M. asked the appellant if she could stop because her mother would soon be home. The appellant became repentant and apologized to M.M., offering to give her money and threatening to kill himself. M.M. again asked the appellant to leave and he did so. Immediately following the appellant's departure, M.M. called her mother at work. Moody, the victim's mother, testified that, during the conversation, her daughter was incoherent and hysterical, "crying and screaming" at the same time. Moody was able to understand the word "gun" and told M.M. to call 911. After speaking with her mother, M.M. called 911 and reported the assault. The police and Moody arrived at the residence shortly after the call. Upon the arrival of the police, M.M. gave one of the officers a bullet that she found on the living room carpet after the appellant left the house. The bullet was determined to be a .25 caliber bullet designed for a semi-automatic weapon.

The appellant was indicted and tried for the aggravated rape of M.M. At trial, M.M. testified that the gun the appellant had on the day of the offense was a handgun, further explaining that "it was the kind of gun where the bullets go in where that comes out, and the bullets go into that little round thing." M.M. also later testified that the gun was similar to guns used to play Russian Roulette. She asserted that neither she nor her mother ever kept a gun in the house; therefore, the bullet must belong to the appellant. M.M. surmised that the appellant dropped the bullet while loading his gun. The appellant testified that he did not own a .25 caliber weapon but did admit that he owned a .380 caliber semi-automatic pistol.

The jury convicted the appellant of aggravated sexual battery. The trial court sentenced the appellant as a Range I offender to eight years incarceration in the Tennessee Department of Correction. Subsequently, the appellant filed a motion for new trial alleging, among other things, that, because there had been no preliminary hearing, the appellant was unaware prior to trial that M.M. would testify that the gun used during the offense was a revolver. He further alleged that he was unaware that the semi-automatic bullet introduced by the State would not fire in a revolver. After trial, appellant's counsel was told by a bailiff that there is no such gun as a .25 caliber revolver, and, regardless, the .25 caliber semi-automatic ammunition would not fit into a revolver due to the difference in gun designs. The appellant contended that this evidence would be crucial in impeaching the credibility of the State's main witness, M.M. A hearing was held on the appellant's motion for new trial. The trial court issued an order denying the appellant's motion for new trial, finding that the appellant had not met the requirements necessary for granting a new trial based upon newly discovered evidence. The appellant requests that this court review the trial court's denial of a new trial based upon newly discovered evidence.

## II. Analysis

In State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993) (citations omitted), our supreme court articulated the test for granting a new trial on the basis of newly discovered evidence:

It has long been recognized under Tennessee law that a trial court should grant a defendant a new trial on the basis of newly discovered evidence when [(1)] the defendant has been reasonably diligent in obtaining evidence, [(2)] the materiality of the new evidence is apparent, and [(3)] the evidence is likely to change the result [of the trial]. It is true that newly discovered impeachment evidence will not constitute grounds for a new trial, as a general rule. But if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered.

In order to be entitled to a new trial based on newly discovered evidence, all three prongs of the test must be met. See State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994). Furthermore, the decision to "grant[] or den[y] a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial judge." State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). Accordingly, our standard of review is abuse of discretion. See State v. Meade, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996).

Initially, we note that, although the appellant challenges the trial court's ruling regarding his motion for new trial, the appellant has failed to include in the record for our review the transcript of the hearing on the motion for new trial. "When an accused seeks appellate review of an issue in this court, it is the duty of the accused to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issue[] which form[s] the basis of the appeal." State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999); see also State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). Accordingly, when this court is presented with an incomplete record, which does not contain a transcript of the relevant proceedings, this court is precluded from considering the issue and must conclusively presume that the trial court's ruling was correct. See State v. Griffis, 964 S.W.2d 577, 593 (Tenn. Crim. App. 1997); State v. Matthews, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990). Nevertheless, from the record before us, we can determine that the trial court did not abuse its discretion in denying the appellant's motion for new trial.

The trial court's order denying the appellant's motion for new trial indicates that the following proof was presented at the hearing: an affidavit by counsel averring his ignorance of the fact that there is no such gun as a .25 caliber revolver and that even if such weapon exists, a .25 caliber semi-automatic bullet would not fit into a .25 caliber revolver; an affidavit by Steve Thomason, a gun dealer, maintaining that a bullet for a semi-automatic pistol would not fit into a revolver, even a revolver of the same caliber, and expressing his doubt that a .25 caliber revolver exists; "testimony of the victim [M.M.;] demonstrations of the loading of a revolver and magazine (clip) of a semi-automatic pistol[;] an exhibit from the investigating officer's file[;] oral argument of counsel[;] and the entire record in this case."

After reviewing the evidence, the trial court found that defense counsel was reasonably diligent in attempting to discover all material and relevant evidence before the trial and that the gun

evidence would have been material in impeaching the testimony of [M.M.] about what she remembered seeing at the time of the offense. However, the court is not satisfied that the evidence concerning the cartridge and types of pistols would change the result of the trial.

. . .It appears that [M.M.] may be mistaken about the type of gun or that the defendant may have attempted to load an automatic round into a revolver, which might explain why it was found on the floor. In any event, the victim seems no less certain or convincing about the occurrence resulting in the defendant's conviction. Therefore, while this so called newly discovered evidence would be admissible in cross examination of the victim, this court is satisfied that the victim would still be sufficiently credible to convince the jury that the defendant committed the offense.

. . .This convinces the court that the jury would not have reached a different conclusion about the required elements of the offense merely because the victim could not accurately describe the handgun, especially in light of the traumatic circumstances of this offense.

See Caldwell, 977 S.W.2d at 117; State v. Parchman, 973 S.W.2d 607, 610-11 (Tenn. Crim. App. 1997).

In support of the trial court's findings, we observe that, at trial and at the sentencing hearing, the victim consistently testified regarding her description of the weapon. Specifically, M.M. consistently described the gun as having "the kind of barrel that [comes] out of the gun, you know. . . . [L]ike the kids play Russian Roulette with that you spin." She was equally unfailing in her assurance that neither she nor her mother kept a gun in the house. As this court stated in Parchman, 973 S.W.2d at 610,

[a] new trial will not be granted on newly discovered evidence when the effect is merely to impeach a witness' testimony at trial unless the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission would change the outcome of the case.

We are not convinced that the "newly discovered evidence" regarding the bullet is "so crucial" as to change the outcome of the appellant's case. Again, we note that our standard of review in this case is abuse of discretion, and, based upon the record before us, we are unable to conclude that the trial court abused its discretion in denying the appellant's motion for new trial. See State v. Marlon D. Beauregard, No. W1999-01496-CCA-R3-CD, 2000 WL 705978, at *4-5 (Tenn. Crim. App. at Jackson, May 26, 2000), perm. to appeal denied, (Tenn. 2001).

### III. Conclusion

Based on the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE