IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2004 Session

## STATE OF TENNESSEE v. MALINDA L. MASON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-T-348     Frank G. Clement, Jr., Judge**

_____

**No. M2003-03065-CCA-R3-CD - Filed March 29, 2005**

_____

Defendant, Malinda L. Mason, was indicted for driving under the influence of an intoxicant and for violation of the implied consent law. Following a jury trial, Defendant was convicted of driving under the influence, fifth offense, and sentenced to twenty-one months in the county workhouse as a Range I, standard offender. Defendant's sole issue on appeal challenges the trial court's denial of her request for a mistrial. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Peter D. Heil, Nashville, Tennessee, (on appeal); and Thomas Overton, Nashville, Tennessee, (at trial), for the appellant, Malinda L. Mason.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Jennifer Tackett, Assistant District Attorney General; and Kristen Shea, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

Because Defendant does not challenge the sufficiency of the convicting evidence, we will only briefly outline the evidence supporting her conviction. Officer Richard Foley with the Metro Nashville Police Department was on routine patrol on the night of April 5, 2002, when he noticed Defendant's car make a sharp left turn in front of him shortly after midnight. Officer Foley followed Defendant for approximately a mile. During this time, Defendant's car crossed the white line into the left lane twice. Defendant's car at one point also swerved from the middle lane into the right turn lane and back again into the middle lane. Officer Foley initiated a stop, and Defendant pulled into a parking lot. Officer Foley said Defendant's eyes were watery, her speech was slurred, and he detected an obvious odor of alcohol on her breath. Defendant experienced difficulty in retrieving

her driver's license. When she exited her car, Defendant fell back, and then fell again when she walked toward the patrol car. Officer Foley called for another officer to provide back-up.

Defendant repeatedly refused to take the field sobriety tests. Officer Foley explained the implied consent law to Defendant and warned her that if she also refused to take a blood alcohol test, her driver's license could be suspended. Defendant continued to refuse to submit to either the field sobriety tests, a blood alcohol test or a breathalyzer test. Defendant told Officer Foley that she had only had five hours of sleep within the past twenty-four hours. Defendant said that she had been to a restaurant that night, but she denied that she had consumed any alcohol.

Officer James Davis, Jr. responded to the request for back-up. Officer Davis said that Defendant was agitated during the stop, her speech was slurred, and there was an odor of alcohol about her.

A few minutes after the jury began deliberations, the trial court discovered that the court clerk had inadvertently given the jury a copy of count two of the indictment charging Defendant with violation of the implied consent law. Defendant moved for a mistrial, and the trial court responded,

> I don't blame you for asking for it, but out of respect for you and the jury and the State, I'm going to decline to rule upon it now. I think it is important to find out if any juror saw it. Then if they did, did it affect their judgment or what have you? But I will do that after the jury comes back in.

Defendant asked the trial court to voir dire the jurors individually about the extraneous information. After the jury returned a guilty verdict, the trial court posed three general questions to each juror: whether they saw count two of the indictment; what they understood count two to mean; and whether seeing count two influenced their decision.

Seven jurors reported that they saw count two of the indictment, four jurors said they did not see count two, and one juror could not remember whether or not he had seen count two. Six of the jurors who read count two of the indictment said that they did not think that Defendant was charged with another offense, and considered Defendant's failure to take a blood alcohol test to be part of the DUI offense. One juror said that she understood count two of the indictment to mean that Defendant would lose her license if she were found guilty, and that this had "somewhat" of an influence on her decision. The juror later said, however, that her vote of guilty was based on the evidence presented at trial, and that she had general knowledge of the consequences of refusing to take a blood alcohol test. All twelve jurors confirmed that they would have voted to convict even if count two had not been shown to the jury.

Teresa Covington, the court officer in charge of supervising the jury, testified that only about two or three minutes elapsed between the time the jury retired for deliberations and when she retrieved the copies of count two of Defendant's indictment. None of the jurors asked her why she

was removing the copies, and Ms. Covington said she did not have any conversation with the jury members about count two.

Both parties agree that it was improper to show the jury count two of Defendant's indictment charging her with violation of the implied consent law. Any person who drives a motor vehicle in Tennessee is "deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood . . ." Tenn. Code Ann. § 55-10-406(a)(1). If a person refuses to submit to a blood alcohol test after being informed of the consequences of failing to do so, the person may be charged with violating the implied consent law. *Id*. § 55-10-406(a)(3). Violation of the implied consent law, however, is not a criminal offense, and a violator must "be charged by a separate warrant or citation that does not include any charge of violating § 55-10-401 that may arise from the same occurrence." *Id*.

Defendant argues, however, that the trial court exceeded the scope of inquiry permitted under Rule 606(b) of the Tennessee Rules of Evidence when it asked the individual jurors if count two had any impact on their decision as to Defendant's guilt. The State contends that the trial court's questions were necessary to satisfy the State's burden that the extraneous information was not prejudicial.

Rule 606(b) provides that:

> [u]pon an inquiry into the validity of a verdict of indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Tenn. R. Evid. 606(b).

Defendant contends that Rule 606(b) lends itself to two interpretations. On the one hand, some courts have interpreted the restrictions outlined in Rule 606(b) to permit a juror's testimony only as to the existence of the extraneous information, and not the subjective effect of that information on the juror's mental processes. *See Carruthers v. State*, 145 S.W.3d 85, 95-96 (Tenn. Crim. App. 2003); *Fulwood v. Lee*, 290 F.3d 663, 680 (4th Cir. 2002). Under this view, the court is "only concerned with the probable effect the extraneous information would have on the hypothetical average juror, and not with the actual subjective effect the information had on [the juror receiving the extraneous material]." *United States v. Lloyd*, 269 F.3d 228, 238 (3rd Cir. 2001).

On the other hand, some courts have held that once the defendant shows the existence of extraneous information, the restrictions reflected in Rule 606(b) are no longer applicable. *See Robert D. Walsh v. State*, No. W2003-02040-CCA-R3-PC, 2004 Tenn. Crim. App. LEXIS 752, *20 (Tenn. Crim. App, at Jackson, Aug. 23, 2004), *perm. to appeal granted* (Tenn. Dec. 20, 2004); *State v. Robert Emmet Dunlap, Jr.,* No. 02C01-9801-CC-00009, 1998 WL 641338 (Tenn. Crim. App., at Jackson, Sept. 21, 1998), *no perm. to appeal filed*; *see also United States v. Zelinka*, 862 F.2d 92, 96 (6th Cir. 1988). Under this interpretation, a trial court may ask any question that is necessary to determine whether the extraneous information prejudicially affected the deliberation of the individual jurors.

Our Supreme Court adopted Rule 606(b) in *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn. 1984). The rationale behind Rule 606(b) is "grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." *Tanner v. United States*, 483 U.S. 107, 121, 107 S. Ct. 2739, 2748, 97 L. Ed. 2d 90 (1987).

The procedure for determining the prejudicial effect of extraneous information upon a juror under the common law rule was set forth in *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954). In that case, the trial court received information during the trial that a juror had been told by a third party that the juror could profit if he returned a verdict favorable to the defendant. *Id.* at 228, 74 S. Ct. at 451. The trial court conferred with the prosecutor *ex parte*, and the Federal Bureau of Investigation was asked to investigate. The matter was dropped after the F.B.I. concluded that the remark was made in jest, and neither the trial court nor the prosecutor told the defendant about the problem. The defendant first learned about the issue from a newspaper story written after the verdict. The *Remmer* court reversed the trial court's denial of the defendant's motion for a new trial, and stated that:

> [t]he trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 229-230, 74 S. Ct. at 451.

"In construing Rule 606(b), federal courts hold that upon proof that a juror has received extraneous information, there arises a rebuttable presumption of prejudice, and the burden then shifts to the government to explain the conduct or to demonstrate the harmlessness of it." *State v. Young*, 866 S.W.2d 194, 196 (Tenn. Crim. App. 1992) (citing *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954); *United States ex rel. Tobe v. Bessinger*, 492 F.2d 232 (7th Cir. 1974); *Richardson v. United States*, 360 F.2d 366 (5th Cir. 1966)).

Our Supreme Court has not specifically addressed the scope of inquiry permitted under Rule 606(b) when a juror has received extraneous information. The Court has, however, alluded to the

type of proof that is necessary to meet the State's burden of proving that the extraneous information was not prejudicial to the defendant. *See State v. Parchman*, 973 S.W.2d 607 (Tenn. 1997).

In *Parchman*, the State failed to sustain its burden of proof under Rule 606(b). While the jury was deliberating, a juror asked the bailiff what would happen if the jury could not reach a unanimous vote on one of the charged offenses. The juror then told the other members of the jury that the bailiff said that they had to reach a verdict on all of the offenses. After this communication, the jury reached a unanimous decision on the offense in question. During an evidentiary hearing, the State's sole proof consisted of the bailiff's testimony that the juror had misconstrued what she said. The trial court found "'that it would be completely speculative to determine or for the court to hold that the jury verdict was tainted upon the evidence before the court.'" *Id.* at 613.

The Court concluded, however, that the State had failed to carry its burden of proof in demonstrating that the bailiff's comment, regardless of what the bailiff did or did not say, was not prejudicial. *Id.*

The State presented no proof on the issue. It would have been possible to call the jurors to testify whether they were influenced by the statement relayed to them by the male juror. Also, the male juror could have confirmed that the statement made by the bailiff was not prejudicial, and this juror could have testified as to what statement he then made to the remaining jurors. *Id.* at 614. *See also Dunlap,* 1998 WL 641338, at *3 (Case remanded for determination of whether the jury received extraneous information about the defendant's prior convictions, and, if so, whether the information influenced their verdict.); *State v. Terry Crowder*, No. 01C01-9101-CR-00024, 1991 WL 155719, at *5 (Tenn. Crim. App., at Nashville, Aug. 16, 1991), *no perm. to appeal filed* (In finding that the State had failed to meet its burden of proof under Rule 606(b), a panel of this Court observed that "no effort was made to call any of the jurors to demonstrate that even if the improper statement had been made, it did not influence their verdict against the defendant.").

This Court examined the trial court's role in determining the presence of prejudicial extraneous information in *State v. Young*, 866 S.W.2d 194 (Tenn. Crim. App. 1992). In *Young*, various bomb threats were received during the trial, and the trial court made every effort to prevent the jurors from hearing about the threats. The defendant filed a motion for a new trial seeking to impeach the jury's verdict. During an evidentiary hearing, the trial court asked each juror if he or she had heard about the bomb threats, and, if so, whether the threats affected their verdict. *Id.* at 196. Based on the jurors' responses, the trial court concluded that the events surrounding the threats had been explained, and, in any event, the defendant had not been prejudiced. *Id.*

In upholding the trial court's denial of the defendant's motion for a new trial, this Court observed that the trial judge was in the best position to determine if the improper activity had been sufficiently explained, or the defendant had not been prejudiced. "Likewise, the trial judge was best able to assess the nature of the extraneous information, as well as its effect, if any, upon the jury." *Id.*

We have had the opportunity to address the scope of inquiry permitted under Rule 606(b) on two occasions. *See Carruthers*, 145 S.W.3d at 95-96; *Walsh,* 2004 Tenn. Crim. App. LEXIS 752, at *16-21. In *Carruthers*, the State appealed from an interlocutory order of the post-conviction court permitting biographical information of an anonymously empaneled jury to be disclosed to the petitioner's counsel. *Carruthers*, 145 S.W.3d at 88. In order to support his claim of ineffectiveness of counsel, the petitioner sought to unseal the jury records in order to interview one of the jurors who petitioner alleged had "misrepresented certain information during the voir dire process," and to interview all jurors about the hostile environment in the jury room and the jury's complaints about the petitioner's behavior during trial. *Id.* at 90. Specifically, as relevant here, the petitioner alleged that Juror 121 was biased against the petitioner because of the juror's prior contacts with the petitioner's family, and that Juror 121 conveyed that information to the other members of the jury.

Based on the facts presented in that case, this Court concluded that unsealing the jury records was appropriate, and outlined the procedures which should be utilized by the trial court in an effort to "maintain the appropriate balance between jury anonymity and the [petitioner's] right to pursue his claim." *Id.* at 96. Part of that process included determining whether extraneous information was imparted to the jury members by Juror 121. This Court concluded that "[a]lthough jurors may be asked about extraneous information imparted, they may not be asked about 'the effect of that information on the juror's mental processes or jury's deliberations.'" *Id*. at 95 (quoting *Gall v. Parker*, 231 F.3d 265, 333 (6th Cir. 2000)). Thus, on remand, the trial court was instructed to limit its questioning of the members of the jury to whether Juror 121 relayed information concerning the defendant's family to him or her, and, if so, the nature and content of that information, without inquiring into the effect of the information on the juror's decision. *Id*. at 96.

In *Walsh*, a post-conviction case, the petitioner alleged that a deputy sheriff's comments to the jury members during deliberations had tainted the verdict. *Walsh*, 2004 Tenn. Crim. App. LEXIS 752, at *17. One of the jurors testified that a sheriff's deputy entered the jury room after the jury had voted unanimously for not guilty on one of the charged offenses, but eleven votes guilty to one vote not guilty on the second charge. The juror who had cast the not guilty vote testified that the deputy effectively told the jury that they must reach a verdict on both counts. At some point after the deputy left the jury room, the juror changed her vote to guilty. *Id.* at *17-18.

It was undisputed that the deputy's comment was an improper communication, and the burden thus shifted to the State to prove that the comment was not prejudicial. On cross-examination by the State, the juror said that the deputy's comment did not cause her to change her vote from not guilty to guilty, but that she arrived at that decision through her own independent analysis. The juror said that she had served on other jury panels and understood that a hung jury was possible if she did not change her vote. *Id*. at *18.

The petitioner argued that the State's cross-examination of the juror as to the effect of the comment on her deliberations was improper. Relying on *Parchman,* a panel of this Court found otherwise:

> We are unable to perceive of how the State would be able to rebut the presumption of prejudice if the State were not permitted to have [the juror] testify as to how the statement influenced her. Accordingly, we conclude that the post-conviction court properly considered the testimony of [the juror]. Moreover, the State has carried its burden in showing the harmlessness of this communication.

*Id.* at *20.

Although perhaps not squarely on point, *Parchman* provides strong guidance in determining the proper parameters of a trial court's inquiry under Rule 606(b) when faced with the presence of extraneous information in front of the jury. *Carruthers*, although filed after *Parchman*, does not cite *Parchman* as authority in determining the limits of a trial court's Rule 606(b) inquiry. *Walsh*, which was filed after *Carruthers*, relied on *Parchman* as authority for its holding. We feel the holdings in *Parchman* and *Walsh* should be applied to the case *sub judice*.

Moreover, the State has carried its burden of proving the harmlessness of the information. At trial, Officer Foley discussed what the implied consent law entailed and the consequences resulting from a driver's refusal to submit to a blood alcohol test. Officer Foley testified, and Defendant did not dispute, that Defendant refused to take the blood alcohol test and was thus at risk in being found in violation of the implied consent law. During closing argument, the State observed,

> [Officer Foley] explains to her that if you don't take [a Breathalyzer] test, you will lose your license for a year. So before you decide whether you are taking this test or not, make sure it is worth your ability to drive for the next year. And if you do take this test, and you don't think the results are right, I will drive you to the hospital, and you can take a blood test to prove it is wrong. What does she do? She makes the decision that despite the fact that she could lose her license to drive for a year, it is worth that risk not to take the test. She refused to take that test.

The trial court provided the following charge to the jury without objection by Defendant:

> If an officer believes a person is under the influence of an intoxicant, the officer may request that the person submit to a test to ascertain the amount of alcohol in her system; however, the person may refuse to take the test.

> If you find from the proof that the defendant was offered and refused to submit to a test for the purpose of determining the alcohol or drug content in her blood and that the officer advised the defendant that refusal to submit to such a test will result in suspension of her operator's license, then such refusal is not sufficient by itself to establish the guilt of the defendant, but it is a fact which, if proven may be considered by you in the light of all other proven facts in deciding whether the defendant is guilty or not guilty. The weight to which such is entitled and whether or not such conduct shows a consciousness of guilt are matters for your determination.

Defendant did not object to this jury instruction.

The jury was thus aware before it began deliberations that Defendant had refused to take a breathalyzer or blood alcohol test, and that her refusal potentially violated the implied consent law. The jury had been instructed on how to process that information in the trial court's charge. Ms. Covington testified that the copies of count two of Defendant's indictment were in the jury room for only about two or three minutes before she retrieved them. Based on these circumstances, and the responses of the individual jurors, we conclude that Defendant was not prejudiced when the jury members were briefly in possession of a copy of count two of Defendant's indictment charging her with violation of the implied consent law.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE