# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 18, 2005

## STATE OF TENNESSEE v. KARL BLAKE

**Appeal from the Circuit Court for Rutherford County**
**No. F-54327     Don Ash, Judge**

---

**No. M2004-02731-CCA-R3-CD -Filed September 8, 2005**

---

The Appellant, Karl Blake, was convicted by a Rutherford County jury of three counts of child rape and one count of aggravated sexual battery, resulting in an effective forty-year sentence. On appeal, Blake raises the following issues for our review: (1) whether the trial court erred in excluding a statement made by the victim at an in camera hearing; (2) whether the trial court should have granted a mistrial based on juror misconduct; (3) whether the trial court should have granted a new trial based on newly discovered evidence; and (4) whether his sentence violates *Blakely v. Washington*. After review of the record, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and Thomas T. Woodall, JJ., joined.

Jerry E. Farmer, Murfreesboro, Tennessee, for the Appellant, Karl Blake.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Laural Nutt, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

In 2002, the victim in this case, D.L.[1] reported to the student resource office at her school that she had been sexually molested by her brother-in-law, the Appellant. The victim's school forwarded the complaint to the Murfreesboro Police Department. D.L. testified that the Appellant, his wife, who is D.L's older sister, and their three sons shared a home with D.L., her mother, and her younger sister. The three adults worked different shifts and took turns caring for the children.

---

[1]In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by their initials. *State v. Schimpf*, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

At trial, D.L. testified that the Appellant had sexually molested her from the time she was nine or ten years old. With regard to count 1, which charged child rape, the victim testified that she had been using the computer but got up to check something in the oven and returned to find the Appellant at the computer. D.L. testified that she remembered "[the Appellant] holding onto my hips and trying to press me into his penis. I remember gritting my teeth in pain. And after a couple of minutes of that, I went back to my room and checked myself. I was bleeding." Describing count 2, which charged child rape, D.L. stated, "it was when my youngest nephew, Jordan, he was running a fever, I guess because he was teething . . . and I was trying to get him to take a nap. And, so I was laying with him on his mom's bed which they shared. And Karl came in and he laid behind me, because I was facing Jordan trying to get him to go to sleep. And he pulled down my shorts and started fingering me. . . . He tried to get his penis in me, but it went the wrong - - it didn't work the first time. And then he tried again and it did work." The Appellant testified that the incident alleged in count 3, charging child rape, occurred when "I didn't feel well, so I laid down on my mom's bed. . . . He came in and propped me on my knees when my head was laying on the pillow. And he pulled my shorts down and started fingering me as well." The proof with regard to count 4, aggravated sexual battery, established that the victim was in the kitchen "getting something to eat. And [the Appellant] lifted me up on the counter. And I remember hearing him unzip his pants, and one of his hands was by his waist. . . . And his other hand was underneath my shirt. . . . I couldn't see what his other hand was doing. But it was moving quickly, and his hand - - and his breathing increased." The Appellant zipped up his pants and resumed his normal routine when his wife knocked on the door. All four counts of the indictment occurred between January 1, 1998 and December 31, 2002, when the victim was under thirteen years of age.

The Appellant testified that he was routinely placed in charge of the victim, her younger sister, and his sons when no adult was present. Although he related that this occurred on many occasions, he denied, however, any sexual contact with the victim. After a jury trial, the Appellant was convicted of three counts of rape of a child and one count of aggravated sexual battery. The trial court imposed a twenty-year sentence for each count of child rape and eight years for aggravated sexual battery. The court ordered that two counts of child rape be served consecutively, for an effective sentence of forty years, and that the third count of child rape be served consecutively to the sentence for aggravated sexual battery for an effective sentence of twenty-eight years. These two periods of confinement were then ordered to be served concurrently for an effective forty-year sentence. The Appellant's motion for new trial was denied, with this appeal following.

**Analysis**

**I. Admissibility of Statement**

The Appellant argues that the trial court erred by excluding a relevant pre-trial statement of the victim. At a pre-trial in camera hearing, called for the purpose of discussing plea negotiations, the Appellant's trial counsel asked the victim, "[D.L.], let me ask you this, if the case were to go to trial, and say for instance you testified and the jury didn't believe you and Mr. Blake were allowed to go free, would that be okay with you?" The victim responded, "I guess so." The Appellant argues

that this statement is admissible under the rule of contradiction because "the only direct proof that [the Appellant] committed the conduct necessary to prove the alleged crimes was the victim's testimony, which [the Appellant] denied," and "the victim's statement at the in chambers hearing . . . would have had the effect of canceling out the proof resulting in an acquittal for [the Appellant]." *See State v. Matthews*, 888 S.W.2d 446, 449-50 (Tenn. Crim. App. 1993). This rule allows the admission of evidence where "contradictory statements by a witness in connection with the same fact cancel each other." *Id*. at 449. However, the rule "applies only when the inconsistency in the witness's testimony is unexplained and when neither version of the testimony is corroborated by other evidence." *Id*. at 450.

The trial court ruled that the victim's statement was not relevant. We agree. Preliminarily, we note that "[t]he admissibility of evidence is generally within the broad discretion of the trial court . . . [and that] absent an abuse of that discretion, the trial court's decision will not be reversed." *State v. Edison*, 9 S.W.3d 75, 77 (Tenn. 1999) (citing *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn.1996)). Tennessee Rule of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Clearly D.L.'s statement that she would accept a jury finding of not guilty is not relevant to the Appellant's guilt or innocence. This statement only reveals that D.L. would accept the jury's verdict if the jury chose to acquit. This issue is without merit.

## II. Juror Misconduct

Next, the Appellant argues that a conversation between Detective Boske of the Murfreesboro Police Department, the State's representative at trial in this case, and one juror in the presence of another juror tainted the verdict; therefore, the verdict should be overturned. At a jury out hearing, Detective Boske, who was scheduled to be a witness in this case, related that he overheard a conversation between two jurors in the hall discussing a tract of land that was for sale. He knew about the land the jurors were discussing, and he joined in the conversation. At this point, the State promptly advised the trial court that Boske would be excluded from the courtroom for the remainder of the trial and that it would not call Boske as a witness. Notwithstanding the State's proposed remedial action, the Appellant continued to press for a mistrial.

A hearing followed during which Mr. Johnson, a juror, testified that he had been talking to a female juror about property on Rocky Fork Road during a break in the trial when Boske approached them in the hall. Mary Dobson, also a juror, testified that, as she was talking to Mr. Johnson, Boske approached and began talking to Mr. Johnson, and she walked away. The court denied the Appellant's request for a mistrial and dismissed Mr. Johnson from the jury.

The Appellant argues that he is entitled to a mistrial because "[a]lthough the trial court dismissed one juror who admitted being engaged in the conversation with Detective Boske, there was at least one other juror who was engaged in the conversation at the time Boske joined it, and possibly others who were influenced by it." The Appellant cites *State v. Blackwell*, 664 S.W.2d 686,

690 (Tenn. 1984) to argue that Boske's remarks "may have affected the minds or emotions of the jurors" to create a presumption of prejudice.

When there is extraneous prejudicial information or any outside influence brought to bear on a juror, the validity of the verdict is questionable. *State v. Parchman*, 973 S.W.2d 607, 612 (Tenn. Crim. App. 1997). Rule 606(b) of the Tennessee Rules of Evidence prohibits a juror from giving testimony on "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing" his or her vote. Tenn. R. Evid. 606(b); *see also Blackwell*, 664 S.W.2d at 689. However, the rule allows a juror to "testify on the question of whether any extraneous prejudicial information was improperly brought to the jury's attention [or] whether any outside influence was improperly brought to bear upon any juror. . . ." Tenn. R. Evid. 606(b).

If it is shown that one or more jurors has been exposed to extraneous prejudicial information or improper influence, there arises a rebuttable presumption of prejudice, and the burden then shifts to the prosecution to explain the conduct or to demonstrate the harmlessness of it. *Parchman*, 973 S.W.2d at 612; *State v. Young*, 866 S.W.2d 194, 196 (Tenn. Crim. App. 1992). In order to shift the burden to the prosecution to demonstrate the harmlessness of the communication with the jury, the threshold question is whether the statement communicated to the jury was prejudicial to the Appellant. *Parchman*, 973 S.W.2d at 612.

We agree with the trial court's finding that Detective Boske's actions were not grounds for a mistrial. There is nothing in the record which even suggests that Boske's communications improperly influenced the jury. This issue is without merit.

### III. Newly Discovered Evidence

In his motion for new trial, the Appellant argued that he should be granted a new trial based upon newly discovered evidence. At trial, it was the Appellant's position that the victim's father, David Lyons, was the actual perpetrator of the crimes. The victim's older sister, who was married to the Appellant, testified that her father, Lyons, repeatedly sexually abused her as a child. In rebuttal, the State called David Lyons, who admitted that he had sexually molested the victim's older sister, but he emphatically denied that he had ever molested the victim. He further explained that since 2000, he has been on oxygen due to chronic obstructive pulmonary disease (COPD); therefore, "he was too weak to physically manipulate a child in the way that the victim had testified that she had been manipulated." Subsequent to trial, the Appellant learned that Lyons was under investigation for allegations of sexual abuse of the minor daughter of Lyons' current girlfriend. The Appellant argues that this "new evidence is material to the issue of the [Appellant's] guilt because it impeaches the credibility of David Lyons" that he was too weak to physically commit the crimes as alleged.

In seeking a new trial based on newly discovered evidence, a criminal defendant must establish (1) reasonable diligence in attempting to discover the evidence; (2) the materiality of the

-4-

evidence; and (3) that the evidence would likely change the result of the trial. *State v. Meade*, 942 S.W.2d 561, 565-66 (Tenn. Crim. App. 1996) (citing *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994)). If the defendant fails to show that he and/or his attorney exercised reasonable diligence in the procurement of a witness at the original trial, the trial court may properly deny a motion for new trial based on newly discovered evidence. *See Hawkins v. State*, 417 S.W.2d 774, 792 (Tenn. 1967). Moreover, the trial court is afforded broad discretion in deciding whether to grant or deny a motion for new trial based on newly discovered evidence, and its decision will not be overturned on appeal absent a clear abuse of discretion. *See State v. Walker*, 910 S.W.2d 381, 395 (Tenn. 1995), *cert. denied*, 519 U.S. 826, 117 S. Ct. 88 (1996). In its order denying a new trial, the trial court found that the Appellant had not conformed to the requirements of *Nichols*. Moreover, the court concluded that "the testimony in some instances could have been discovered prior to trial and further the Court finds that the effect on the outcome of the case would have been minimal." We agree. In sum, the Appellant seeks a new trial based upon so-called impeachment of a witness regarding allegations of sexual abuse of a victim, different than the victim in this case, which occurred after the trial in this case. Clearly, these extrinsic allegations are not dispositive of the Appellant's guilt. Thus, the evidence would not have changed the result of the trial. This issue is without merit.

## IV. *Blakely* Error

The Appellant argues that the trial court's imposition of consecutive sentences violates his Sixth Amendment right to trial by jury as recognized by the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).[2] First, we would note that this issue is waived because it was not raised by the Appellant at the sentencing hearing. *See State v. Gomez and Londono*, 163 S.W.3d 632 (Tenn. 2005). Moreover, our supreme court held in *Gomez* that the Sentencing Reform Act of 1989 does not violate the Sixth Amendment guarantee of a jury trial and was, thus, not affected by the *Blakely* decision. *Id*. Accordingly, this issue is without merit.

### CONCLUSION

Based upon the foregoing, we affirm the judgments of conviction and imposition of consecutive sentences.

_____
DAVID G. HAYES, JUDGE

---

[2]The Appellant presents no challenge to his enhanced sentences under the 1989 Sentencing Act.